### In re FELLERATH.

#### (District Court, N. D. Ohio, W. D. April 5, 1899.)

#### No. 46.

BANKRUPTCY—COLLECTION OF ASSETS—PROPERTY UNDER LEVY.

Where the liens acquired by a creditor by the recovery of judgment, the filing of a creditors' bill, and the levy of execution by the sheriff, are dissolved by the subsequent bankruptcy of the debtor, the trustee in bankruptcy may recover any property remaining in the hands of the sheriff under the levy, together with the proceeds of such as has been sold under the execution, and any rents collected by the sheriff.

In Bankruptcy.

Wm. Gordon and Southard & Love, for creditors.
S. P. Alexander, for bankrupt.

RICKS, District Judge. In an interlocutory opinion and order filed in this proceeding some time ago, the court, feeling a little uncertain as to what construction would be put upon several provisions of the bankruptcy law affecting this case, issued a restraining order to the sheriff to hold whatever proceeds of the sale of the bankrupt's property he had in his possession until the further order of the court. The facts necessary to be understood in placing a construction upon this bankruptcy act are that the original suit in this controversy was commenced in the court of common pleas of Ottawa county,

Ohio, on the 12th day of April, 1898. Such proceedings were had that judgment was rendered in favor of the plaintiffs, and against the bankrupt, on the 13th day of January, 1899. The first day of that term of the court was on November 21, 1898, so that the judgment lien dated back to that day, although the sheriff could make no levy on the judgment until January 14, 1899. On the 23d of January, 1899, the plaintiffs began an action in the nature of a creditors' bill, averring that the petitioner was insolvent, and seeking to apply whatever property the bankrupt might have, subject to the orders of the court of common pleas, to the satisfaction of the plaintiffs' judgment. The lien of judgment which the plaintiffs procured by these proceedings was within four months of the time the bankruptcy act took effect in such cases. While it may be true, as alleged, that the plaintiffs proceeded with diligence to collect their claim against the bankrupt, and while it may be true that no effort was made to circumvent the bankruptcy law, or to obtain any advantage as creditors not conveyed by the bankruptcy act, yet it is true that the proceedings taken by the plaintiffs did give to them advantages over other creditors. The proceedings which gave to the plaintiffs these advantages took place within four months of the time when the bankruptcy law went into effect. With these facts found, the court now, in the light of very recent decisions, is of the opinion that the plaintiffs cannot maintain the lien which they undertook to perfect by their suit and execution. Although these proceedings might be tolerated under the insolvency laws of Ohio, they cannot be sustained with the bankruptcy law in effect. The constitutional power of congress to pass a bankruptcy law which shall be uniform and effective in all parts of the country cannot be questioned. It is one of the most familiar principles ingrafted in the constitution.

Judge Baker, in Re Smith, 92 Fed. 135, in the district of Indiana, says:

"The bankruptcy act contemplates no divided jurisdiction. It would cease to possess any vital force or efficiency if the state court, proceeding under our state insolvent law, may hold possession of the bankrupt's estate, collect in the debts, allow claims, and make final distribution among those entitled to participate therein, leaving to this court nothing but the adjudication of bankruptcy and the discharge of the bankrupt. Such a construction is inadmissible, because it would render inoperative numerous express provisions of the bankruptcy act. The state statute and the bankruptcy act cannot stand together. The bankruptcy act is the supreme law of the land, enacted in pursuance of an express grant of constitutional authority, and, in so far as any state law is in conflict with it, such law is suspended and remains inoperative until the federal enactment is repealed. All matters embraced in the bankruptcy act must be controlled and governed by its provisions. Among these are the right and duty of the bankruptcy court to have insolvent estates settled in and by it, under and in accordance with the provisions of the bankruptcy act; to have acts of bankruptcy affecting the settlement of estates determined by it (section 3); to have the rights of debtors to file voluntary petitions, and of creditors to file involuntary petitions, determined by it (section 4); and to have liens and preferences governed by it (sections 60, 67). These and various other provisions of the bankrupt act, affecting the conduct and rights of debtors and creditors, are different from those found in the statutes of this state touching general assignments. In my opinion, the operation of the state law is suspended, and the state courts are without any jurisdiction or authority to administer the estate of bankrupts or insolvents. * * * The assignee, under

the inoperative state law, takes no title as against the creditors by the deed of assignment; and all of his acts touching the estate of the bankrupt, as well as all acts by the state court in the administration of the same, are unauthorized and void, and will be treated as nullities, wherever drawn in question. These consequences necessarily follow from the terms of the bankruptcy act, and this conclusion is supported by the following among many cases in which the question is considered: In re Hathorn, Fed. Cas. No. 6,214; In re Bininger, Fed. Cas. No. 1,420; In re Wallace, Fed. Cas. No. 17,094; In re Washington Marine Ins. Co., Fed. Cas. No. 17,246 [and other cases cited]. * * * It follows that the assignee is a mere naked bailee for the creditors, without a shred of title or lawful authority to the possession of the bankrupt's estate, and it would certainly be strange if, when the bankruptcy court finds property in the possession of such a bailee, it may not in a summary way require him to surrender possession to the court which alone has the power to administer the estate. The fifteenth clause of section 2, which grants authority to the courts of bankruptcy to 'make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act,' in my judgment confers ample authority on the court in a summary way to reduce into its possession property in the unauthorized possession of an assignee or receiver of a state court. If the property of the bankrupt is in the possession of a person who has a colorable title, as purchaser or otherwise, it may be that the court would not compel him, by a summary proceeding, to surrender the possession; but where the possession, and only right of possession, are under the authority of a state court by virtue of a general assignment for the benefit of creditors, no contestable question is presented. The possession of the assignee and of the state court are unauthorized, and it seems to me that this court may well hold, as it does, that their possession is held for the benefit of the creditors of the bankrupts, and subject to the paramount authority and jurisdiction of this court. No question of concurrent jurisdiction or of the conflict of jurisdiction can possibly arise. The jurisdiction of the bankrupt court is supreme, it is exclusive, and the acts of the state court are unauthorized and void, because jurisdiction over the person and estate of the bankrupts is drawn to, and vested exclusively in, this court by the adjudication of bankruptcy. An order may be drawn directing the assignee to deliver up the property of the bankrupts to the receiver of this court."

This opinion of Judge Baker is supported by several others published in the last numbers of the Federal Reporter, and seems to me so clear and comprehensive that I adopt the opinion as expressing my views on this subject. An order will therefore be made that the trustee proceed to recover from the sheriff of Ottawa county whatever unconverted property of the bankrupt he may have in his possession, and that he recover also whatever money has come to the said sheriff from the collection of rents or the sale of property under execution.