### In re HAMMOND.

#### (District Court, D. Massachusetts. December 22, 1899.)

#### No. 1097.

**1.** BANKRUPTCY—JURISDICTION—SUITS BY TRUSTEE.

A court of bankruptcy has jurisdiction of a proceeding by a trustee in bankruptcy for the recovery of property of the bankrupt held by an attaching creditor whose attachment was obtained in a suit begun against the bankrupt within four months prior to the filing of the petition in bankruptcy.

**2.** SAME—ASSETS IN BANKRUPTCY—PROPERTY OF BANKRUPT'S WIFE.

Where a married woman engages in business on her own account, but does not file the certificate required by the state law (Pub. St. Mass. c. 147, § 11) to entitle her to the privileges of a feme sole trader, so that her property employed in such business remains liable to attachment as the property of her husband at the suit of his creditors, the husband's trustee in bankruptcy will take title to such property, attached by a creditor of the husband within four months before the filing of the petition in bankruptcy, since it is property "which might have been levied upon and sold under judicial process against him," within the meaning of Bankr. Act 1898, § 70a, cl. 5.

**3.** SAME—ATTACHMENT LIEN—SUBROGATION OF TRUSTEE.

Where a creditor of the bankrupt, within four months before the filing of the petition in bankruptcy, had attached property belonging to the bankrupt's wife, and employed by her in her business, but remaining liable to such attachment by reason of her neglect to file the married woman's certificate required by the state law, and the creditor had sold some of the property attached, and held possession of the remainder, *held*, under Bankr. Act 1898, § 67c, cl. 3, that the dissolution of such lien would militate against the best interests of the estate, and consequently it should not be

dissolved, but that the trustee was entitled to the property, and to the proceeds of that sold, and should be subrogated to the rights of the attaching creditor, as respects the lien.

William W. Dwyer, for bankrupt.

LOWELL, District Judge. In this case the trustee seeks to obtain certain property held under attachment on mesne process by a creditor of the bankrupt. The property in question belonged to the bankrupt's wife, and was used by her in a business which she carried on. She did not file a married woman's certificate, as required by Pub. St. Mass. c. 147, § 11. The property was, therefore, subject to attachment as the property of her husband by the husband's creditors. The court has to determine (1) if it has jurisdiction to compel the delivery by the creditor and his agents to the trustee of property to which the trustee is entitled, and (2) if the property here in question passed to the trustee by virtue of the bankrupt act.

1. Has the district court jurisdiction of proceedings to compel an attaching creditor of the bankrupt to deliver up to the trustee property in the creditor's possession to which the trustee is entitled by virtue of the bankrupt act? Before seeking to interpret the provisions of the bankrupt act concerning the jurisdiction of this court, certain general observations should be made. An answer absolutely satisfactory to the question proposed is made impossible by the composition of the existing bankrupt act. This statute, as finally passed, is the last revision of a bill which had been before congress and the country about 10 years. The provisions of the original bill, as prepared by Mr. Torrey, may have been altogether consistent, though this can hardly be asserted positively of any draft of important and complicated legislation. Whatever was the consistency of the original Torrey bill, the numerous modifications made in it from time to time have introduced into the several sections of the original bill some inconsistencies, so that the problem sometimes presented to the courts in construing the finished act is not, it must frankly be said, the making of a consistent whole out of several parts, but rather the rejection of one of two inharmonious parts as least in accord with the general plan of the whole. A study of the development of the bill through its successive drafts shows clearly that jurisdiction originally conferred in one section has been taken away or enlarged by a modification of that section, without a corresponding amendment of other sections in which the jurisdiction originally conferred was asserted or implied. There is no intention to declare that in this respect the bankrupt act of 1898 is more faulty than other measures of important legislation passed by congress, by the legislature of the states, or by the legislatures of foreign countries. It may be impossible to frame an important legislative measure, where much change by way of compromise is necessary, without the inadvertent introduction of some inconsistencies, especially if the measure has been discussed through a number of years; but it is well that the court should recognize the nature of the problem under consideration, and should not pretend to seek for absolute harmony in the provisions of a statute where absolute harmony is demonstrably non-

existent. In re Richards, 37 C. C. A. 634, 96 Fed. 935, 939. The jurisdiction of the district court is supposed to be conferred principally by section 2 of the act, and especially in clauses which read substantially as follows:

"The district courts are hereby invested with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings;" to "(6) bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy; (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided;" "(13) enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or imprisonment or fine and imprisonment;" "(15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act."

Section 2 is said to be derived from section 6 of the bankrupt act of 1841 and section 1 of the bankrupt act of 1867, both which last-mentioned sections, it is said, conferred jurisdiction upon the district court for the determination of controversies like that presented in this case. The interpretation thus put upon section 6 of the act of 1841 appears to be pretty well established by Ex parte Christy, 3 How. 292, 11 L. Ed. 603. As to the act of 1867, the case is not so clear. See Smith v. Mason, 14 Wall. 419, 430, 20 L. Ed. 748. It may be admitted, however, that if section 2 of the act of 1898 stood unaffected by subsequent sections, and by the phrase, "except as herein otherwise provided," it might fairly be supposed to give to the district court that jurisdiction over suits brought by the trustee to recover property alleged to belong to the bankrupt's estate which was exercised in this country under the acts of 1841 and 1867 by the United States courts. The omission in the existing bankrupt act of any section corresponding to section 8 of the act of 1841 or to section 2 of the act of 1867, if it were merely an omission, probably would not be taken to deprive the district court of so important a part of the jurisdiction conferred upon United States courts by earlier bankrupt acts. The difficulty in the present act, though aggravated by the vagueness of section 2, is created mainly by section 23. Subsection "a" does not concern immediately the question presented in this case. It limits the jurisdiction of the circuit courts of the United States, and has no direct reference to the district courts, or to the state courts. Its form retains traces, however, of an epoch when the circuit court of appeals did not exist, and when an appeal lay to the circuit court from the district court. So far as I can discover, the circuit court has, under the act of 1898, no jurisdiction whatever over "proceedings in bankruptcy" in the sense in which these words are evidently used in subsection "a." In the earlier drafts of the bill prepared before the establishment of the circuit court of appeals, the circuit court was naturally given an appellate jurisdiction in bankruptcy. See H. R. 3316, 51st Cong., 1st Sess. §§ 8, 10. Subsection 23b provided that:

"Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

In discussion and in decided cases, three constructions have been put upon the limitations imposed by this subsection. The first construction, as it will hereinafter be called, limits the operation of the subsection to the circuit court. By this first construction, therefore, no limitation is imposed upon the jurisdiction given to the district court by section 2. The second construction interprets subsection "b" as giving to the state courts exclusive jurisdiction, except with the defendant's consent, of all suits concerning the bankrupt's estate brought by the trustee against any person other than the bankrupt. The third construction, by way of compromise, gives to the state courts exclusive jurisdiction, except with the defendant's consent, of suits concerning the bankrupt's estate, if they be suits which the bankrupt himself could have brought had he not been a bankrupt, but gives to the district court jurisdiction, at least concurrent, of those suits brought by the trustee against an outside claimant which the bankrupt himself could not have brought; as, for instance, suits brought to set aside an assignment which is avoided by the bankrupt act, or to restrain the sale of property held under an attachment avoided by the act. The history of the development of section 23 from the original provisions of the Torrey bankrupt bill does not furnish an authoritative interpretation of the section as finally passed, but, if the language of the section be ambiguous, the court may properly look to this history for light upon the meaning of that language. In re Richards, 37 C. C. A. 634, 96 Fed. 935. The eleventh section of the original Torrey bill read as follows:

"Sec. 11. Jurisdiction of State Courts. Controversies between trustees and adverse claimants, concerning the property and rights acquired by the trustee as such, may, with the approval of the courts of bankruptcy in which the proceedings are pending, be litigated in state courts, in the same manner as if such controversies had been contested between the bankrupt, prior to becoming such, and the adverse claimants."

Under the amended act of 1867 the court of bankruptcy had some authority to direct the trustee to bring suit in the state courts. See Acts 1874, c. 390, § 2; 18 Stat. 178. See, also, section 9 of the so-called "Lowell Bill," S. 1372, 48th Cong., 1st Sess. In the modified Torrey bill, introduced into the house of representatives, and printed H. R. 3316, 51st Cong., 1st Sess., section 11, above quoted, appears in substantially the same form. It is somewhat difficult to determine whether (1) section 10 of H. R. 3316 was intended to confer upon the court of bankruptcy summary and plenary jurisdiction, while section 11 merely permitted that court to direct that some of the controversies over which it had jurisdiction should be, for reasons of convenience, litigated in the state courts; or (2) that section 10 was intended to give to the court of bankruptcy only summary jurisdiction, while section 11 limited the jurisdiction over plenary suits to the state courts, after the approval of the court of bankruptcy for bringing such suits had been obtained. As the act did not pass in this form, the question need not be answered definitely. H. R. 3316 passed the house of representatives; on July 25, 1890, was read twice in the senate, and was referred to the committee on the judiciary. On August 26, 1890, that committee reported a substitute bill. See

Calendar No. 1937, 51st Cong., 1st Sess. Section 8 of the bill thus reported was as follows:

"Sec. 8. Jurisdiction of the United States and State Courts. Suits by the trustee shall be brought in the courts where the bankrupt might have brought the same if he had been entitled to recover therein. Suits to recover property in the possession of the trustee, including suits for the foreclosure of mortgages upon real estate, shall be brought in the court having jurisdiction thereof if they had been brought against the bankrupt. Suits for the establishment of liens against the personal property of the bankrupt, or the fund in the possession of the trustee, shall be brought in the district court of the United States where the proceedings in bankruptcy are pending. It shall be within the competence of the bankrupt court, on application by the trustee or any creditor, to issue certiorari to any other court in which a controversy is pending, to certify that controversy into such court to be there proceeded with and determined according to law."

This section, it will be noticed, compelled the trustee to bring suit in the state courts, but gave to the court of bankruptcy, if dissatisfied with the proceedings of the state court, jurisdiction to review them by certiorari. It seems unlikely that the section was intended to discriminate between suits which the bankrupt himself could have brought and those which he could not have brought, and that the district court was given original jurisdiction of the latter, while over the former it had jurisdiction only by certiorari. This bill failed of passage in the senate. In January, 1892, a bankruptcy bill was introduced into the senate. See S. 1694, 52d Cong., 1st Sess. Section 9 read as follows:

"Sec. 9. Jurisdiction of State Courts and United States Circuit Courts. (a) The state courts and United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired by the trustees, in the same manner and to the same extent as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants. (b) Suits by the trustee shall only be brought in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant. (c) The United States circuit courts shall have concurrent jurisdiction with the courts of bankruptcy, within their respective territorial limits, of the offenses enumerated in this act."

This section, it will be observed, is substantially section 23 of the existing act, except for the caption and the first four words of subsection "a," "The state courts and." At page 65 of the "Analysis," appended to the bill, appears the following comment on section 9:

"Jurisdiction of State Courts and United States Circuit Courts. The proposed plaintiff in a suit against the bankrupt estate may institute proceedings in the appropriate state court, or, if qualified, in the United States circuit court, or if he desires, in the court of bankruptcy; but the trustee is limited to the institution of such suits as he may wish to bring in the court in which the bankrupt, of whose estate he is trustee, might have brought them if proceedings had not been instituted. These provisions are for the purpose of having controversies litigated at the places most convenient for the parties litigant and witnesses."

The contemporary exposition of the intent of section 9 thus contained in the senate document affords some indication that the section was intended to limit the jurisdiction of the district court as well as

98 F.—54

that of the circuit court, to give the party opposed to the trustee the right to consent to suit in the district court, but to deprive the trustee, except with that consent, of the right to go to any United States court whatsoever. No distinction is suggested between suits which the bankrupt could have brought himself had he not become bankrupt and those which the trustee can bring though the bankrupt could not have brought them. If, as has been suggested, the trustee was, by the provisions of section 8 of H. R. 3316, forbidden to bring suits of the latter class in the state courts, and was deemed to be sufficiently protected by the remedy of certiorari given in that section, it is improbable that his rights were extended by section 9 of S. 1694, which, in substance, is much like section 8 of H. R. 3316, with the provision concerning certiorari left out. In the first session of the 52d congress several bills to establish a system of bankruptcy were introduced into the house of representatives, and were referred to the committee on the judiciary. On June 27, 1892, that committee reported H. R. 9348. See Report No. 1674, 52d Cong., 1st Sess. Section 23 of H. R. 9348 is substantially like section 23 of the existing act, except for its caption, "Jurisdiction of United States Circuit Courts." The difference between subsection 9a of S. 1694 and subsection 23a of H. R. 9348 is substantially this: The former, by its caption and language, defines the jurisdiction both of the state court and of the circuit courts, while the latter defines and limits the jurisdiction of the circuit courts, saying nothing about that of the state courts. Subsection "b" is, however, identical in the two bills. In the exposition of H. R. 9348 made by the house committee on the judiciary, it is said, "The trustee can only sue in the state or federal court in which the bankrupt might have sued had he not become a bankrupt except by consent;" and in the appendix to H. R. 9348 appears the same exposition of section 23 as that made of section 9 in S. 1694. In 1898 congress again took up the question of bankruptcy, apparently much where it was left in 1892 (S. 1035, 55th Cong., 2d Sess.), and passed the existing section 23, which differs from section 23 of H. R. 9348 in little else than its caption, "Jurisdiction of the United States and State Courts." As there is nothing said concerning the jurisdiction of the state courts in subsections "a" and "c," it is an inference of some weight from the caption of the section that their jurisdiction is somewhat dealt with in subsection "b." Again, the change in the caption made between H. R. 9348 and S. 1035 affords an indication, though perhaps slight, that the jurisdiction of all United States courts is determined, and not merely the jurisdiction of the circuit court. The language of subsection "b," moreover, is not expressly limited to the circuit court, as is that of subsection "a," but is grammatically applicable to all courts of every sort, state and federal.

The account just given of the development of the existing section 23 from its original draft in the first Torrey bill shows that there are historical considerations which make for what has been called the "second construction" of subsection "b,"—that construction which deprives the district court of all jurisdiction of proceedings against any person except the bankrupt himself to recover property alleged

to belong to the bankrupt's estate. The history of the section has been stated thus fully, not because the history of a statute establishes authoritatively its interpretation, but because the historical argument is entitled to some weight, and because it has not been fully stated in any of the decided cases which will presently be referred to. Opposed to the conclusion which would be reached by a following of historical considerations exclusively, there are weighty considerations derived from other parts of the present bankrupt act, from the analogy of other bankrupt acts passed by congress, from convenience, and from decided cases. If, by subsection 23b, congress intended to declare that the bankrupt act should not confer upon any court of the United States jurisdiction of any suit brought by the trustee to recover property alleged to belong to the bankrupt's estate, it is hard to find a reason for subsection 23a, which is concerned with the jurisdiction of the circuit court only. If subsection 23b declares the congressional intent regarding all United States courts, why should it be preceded by a declaration of intent regarding the circuit court specifically? There is, indeed, this difference between subsections "a" and "b": The only jurisdiction left to the circuit court by subsection "a" is that conferred by diversity of citizenship, while subsection "b" would seem to permit any court to take jurisdiction of a controversy by consent of the proposed defendant. To suppose, however, that the object of congress in enacting these two separate subsections was to provide that the circuit court should not have jurisdiction of suits brought by the trustee except on the ground of diversity of citizenship, and that the district court should not have jurisdiction of such suits except by consent, is to impose upon the two subsections and their relation to each other a far-fetched meaning. It ought to be added, perhaps, that the relation of the two subsections to each other is not quite satisfactorily explained by any interpretation proposed. Again, it is hard to reconcile with section 69 the second construction of section 23b,—that which deprives the court of bankruptcy of jurisdiction of suits brought by the trustee to recover property alleged to belong to the bankrupt's estate. By section 69 it is provided that, after the filing of an involuntary petition, the court of bankruptcy may, upon certain conditions, issue a warrant to the marshal to seize the property of the bankrupt, and to turn it over to the bankrupt's trustee, in case the adjudication of bankruptcy is subsequently made. If section 69 is held to empower the marshal to seize only that property which is found in the actual possession of the bankrupt himself, the section is rendered practically nugatory. If, when the marshal, acting under the warrant of the court of bankruptcy, proceeds to seize the bankrupt's property, he is to be stopped from doing so by any claim to the property set up by any person other than the bankrupt himself, manifestly the issuance of the warrant and the proceedings of the marshal will be vain formalities. A claimant for the bankrupt's property can always be provided. Yet if the court of bankruptcy is, by section 69, given power to place in the custody of the marshal property alleged to belong to the bankrupt, but claimed by a third person, it is hard to reconcile the jurisdiction of the court to seize this property sum-

marily under section 69, with a deprivation by subsection 23b of jurisdiction over a suit by the trustee to recover the same property. If the court is given jurisdiction to place such property in the marshal's custody by section 69, but is forbidden by section 23b to take jurisdiction of a suit to recover it by the trustee, this result would follow: Creditors of the bankrupt would generally apply for a warrant to the marshal, under section 69, because under that section property deemed by the court of bankruptcy to belong to the bankrupt would, after adjudication, come into the trustee's possession, and a third person claiming the property would be driven to his action, while, if no warrant issued to the marshal, the property would remain in the possession of the third person, and the trustee would be put to his action to recover the same in the state courts. By the inevitable working of the two sections of the law this would lead to an extension of section 69 which congress never intended, and the possibility of this undue extension, manifestly resulting from the second construction of section 23b, furnishes an argument of some weight that section 23b should not be considered to deprive the court of bankruptcy of all jurisdiction over the suits mentioned. It is true that section 69 applies in terms only to involuntary petitions, but in many cases a voluntary petition can be turned into an involuntary petition by the exercise of a little ingenuity. See, also, sections 3e, 38 (3). Again, section 2 (3) authorizes the court of bankruptcy to appoint receivers, upon application of parties in interest for the preservation of the bankrupt's estate, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed, or the trustee is qualified. The considerations just stated as applicable to the marshal under section 69 are equally applicable to a receiver under section 2 (3); that is to say, either the appointment of a receiver would be a vain formality, or, by the appointment, the court of bankruptcy might ultimately place in the possession of the trustee property concerning which the court would have had no jurisdiction, had the trustee brought suit to recover the same after his appointment. If the second construction of subsection 23b prevails, other inconsistencies in the act will be found to exist. Under sections 3a and 19 it is for the court of bankruptcy to determine, perhaps with a jury, if the bankrupt has given a preference; but it will be for the state court to set aside the preference, and restore the property to the trustee. Under section 26, the trustee may submit controversies to arbitration, and the finding of the arbitrators is to be filed in the court, and to have like force and effect as the verdict of a jury. In what court is the finding to be filed,—the court of bankruptcy or the state court? The controversies to be arbitrated will commonly be those covered by subsection 23b. By section 60d, the court of bankruptcy is to determine the reasonable amount of the attorney's fee, and the trustee may recover the excess for the benefit of the estate. Is the excess to be recovered in the state court or in the district court? If in the former, is the finding of the court of bankruptcy concerning the reasonableness of the amount binding upon the state court? If the excess is to be recovered in the district court, then that court has jurisdiction of some suits by the trustee against persons other than

the bankrupt, and section 23b is not of universal application. By section 67f, certain levies are avoided under certain circumstances, but, if the court shall order that the right under such levies shall be preserved for the benefit of the estate, then the right will pass to the trustee, and is to be preserved by him for the benefit of the estate. Under these circumstances the court may order such conveyance as shall be necessary to carry the purpose of the above provisions into effect. If the court of bankruptcy may, by virtue of this section, order a third party to make a conveyance to the trustee of his right under a lien, then that court has jurisdiction of some suits brought by the trustee against a third party, and the second construction of section 23b is not of universal application. By section 68, in case of set-offs, the amount shall be stated, and the balance only shall be allowed and paid. Now, the allowance must be made by the court of bankruptcy. Does not this fact make it probable that the court of bankruptcy is to pass upon the set-off also? If it does so pass, then it has jurisdiction of some controversies between the trustee and parties other than the bankrupt. So again, under section 68b, it would seem that the set-off is to be passed upon by the court of bankruptcy. The inconsistencies just noted are none of them decisive of the interpretation of section 23, but, taken together, they have some bearing upon its construction.

It has been urged that clauses 6 and 15 of section 2 are also contradictory of the second construction, so called, of subsection 23b, but it seems unlikely that those clauses were intended by their own force to extend largely the jurisdiction of the district court. The authority to bring in and substitute parties was not intended by itself to give this court jurisdiction of controversies concerning which it had received no other grant of jurisdiction. In like manner, clause 15, by giving to the court authority to make orders, issue process, and enter judgments in addition to those specifically provided for, does not extend the jurisdiction of this court to controversies otherwise outside its jurisdiction. The clause provides merely that in controversies within its jurisdiction all appropriate orders may be made, process issued, and judgments entered. See In re Rudnick (D. C.) 93 Fed. 787. It will thus be seen that, upon the whole, a comparison of subsection 23b with some other provisions of the act makes against the second construction of the subsection.

A construction of the statute of 1898 which would deprive the federal courts of jurisdiction of the suits in question would make the act of 1898 unprecedented among bankrupt acts. Under the act of 1800 it is somewhat difficult, indeed, to determine if the district court was intended to have jurisdiction of suits brought by the trustee against third parties concerning the bankrupt's estate. Such jurisdiction was expressly given to the federal courts by the acts of 1841 and 1867. Act 1841, §§ 6, 8 (5 Stat. 445, 446); Act 1867, §§ 1, 2 (14 Stat. 517, 518). This jurisdiction, as vested by the bankrupt act either in the district or the circuit court or both, is particularly important in this country, in view of the separation of the state and federal courts. If nearly all contested suits concerning the estate of the bankrupt are within the exclusive jurisdiction of the state

courts, it will be difficult, and perhaps impossible, for the federal courts to give the law a uniform administration and application. It is true that some of the decisions of the state courts concerning the rights of trustees in bankruptcy are subject to review by the supreme court of the United States; but this right, it is to be feared, will not avail much in the details of petty suits which are concerned with small amounts of property. Plainly, in the acts of 1841 and 1867, congress considered it eminently desirable—even absolutely essential—that the United States courts should be made sufficient unto themselves for the entire administration and collection of the estates of bank-·rupts, though the aid of the state courts might be availed of.

The analogy of the English law and practice in bankruptcy is not particularly instructive, but it should be noticed briefly. The English bankrupt law was originally administered by the chancellor, and, as was said by Lord Eldon in Ex parte Cawkwell, 19 Ves. 233, his predecessor, Lord Hardwicke, "took a very large principle as to the jurisdiction in bankruptcy; thinking that, the legislature having committed to the lord chancellor the jurisdiction in bankruptcy, he had all the authority that he had when sitting in the court of chancery." It was not unnatural, therefore, that no strict distinction was maintained between that which could be done by the chancellor sitting in equity and sitting in bankruptcy. In bankruptcy, as Lord Eldon said in Ex parte Roffey, Id. 468, "the lord chancellor exercises, more by habit and practice than authority, both a legal and an equitable jurisdiction. Upon the statutes and the decisions in bankruptcy it is obvious that no authority is given by those statutes for a great part of the jurisdiction actually exercised, and, unless Lord Hardwicke was right in supposing, according to a note which I have, that the legislature giving this jurisdiction to the lord chancellor intended him to exercise both a legal and equitable jurisdiction, there is no other authority for a vast deal that is done." Upon the whole, however, it seems that the English court of bankruptcy in the last century and in the first half of this century was not considered to have jurisdiction of suits brought by an assignee to recover from third persons property alleged to belong to the bankrupt's estate. Ex parte Pease, Id. 25, 47; Ex parte Dobson, 1 Mont. & A. 666, 673; Ex parte Scudamore, 3 Ves. 85; Halford v. Gillow, 13 Sim. 44. A like rule seems to have been applied to suits brought by third persons against the assignee to recover property in his hands to which he was not entitled. Ex parte Heath, Mont. & B. 169. The reports of the courts of equity and common law, on the other hand, contain not a few cases brought by the assignee to recover from third persons property conveyed to them by way of fraudulent preference and the like, suits which the bankrupt himself could not have brought, and which were maintainable only by virtue of the bankrupt laws. See 1 Cooke, Bankr. Laws (8th Ed.) c. 8, § 12; Bourne v. Dodson, 1 Atk. 154; Brown v. Heathcote, Id. 160; Morgan v. Brundrett, 5 Barn. & Adol. 289. This limitation of jurisdiction was not very strictly applied, especially in proceedings against the assignee. See Ex parte Bulteel, 2 Cox, Ch. 243; Ex parte Marsh, 1 Atk. 158; Ex parte Dale, Buck, 365; Ex parte Flyn, 1 Atk. 185 (a proceeding brought by agreement); Ex

parte Pooley, 2 Mont. D. & D. 505; Ex parte Coysegame, 1 Atk. 192. The amended bankrupt act of 1869 enlarged greatly the jurisdiction of the court of bankruptcy. Ex parte Anderson, 5 Ch. App. 473; Ex parte Rumboll, 6 Ch. App. 842. Even under the act of 1869, however, it has been felt that there is a limit to the jurisdiction of the court of bankruptcy over suits brought by the assignee against third parties. Ex parte Rippon, 4 Ch. App. 639; Ex parte Dickin, 8 Ch. Div. 377. In the latter case the master of the rolls, Sir George Jessel, said:

"It never could, I think, have been the intention of the legislature that the court of bankruptcy should exercise a jurisdiction to decide the title to any real estate in the country which was claimed by a man who happened to be a bankrupt."

Taking the English cases together, they seem to indicate that in the beginning English courts of bankruptcy had considerably less jurisdiction than that which would be conferred upon the district courts by the third construction of subsection 23b of the existing bankrupt act; but that their jurisdiction, by statute and decision, has been extended until they now have a jurisdiction only less than that which would be conferred upon the district court of the United States by what has been called the "first construction" of subsection 23b. The English decisions also illustrate a natural desire to find for the courts of bankruptcy a jurisdiction which shall be a compromise between a jurisdiction over the bankrupt alone and a jurisdiction of all suits concerning property alleged to have belonged to him. They illustrate further the difficulty of establishing this distinction. It should further be observed that English courts of bankruptcy never have had that jurisdiction of plenary suits which was given to the courts of bankruptcy of the United States by the acts of 1841 and 1867.

Having considered the history of section 23 of the bankrupt act, which makes against the jurisdiction of the district court in this case; having considered also certain other provisions of the bankrupt act which make in favor of the court's jurisdiction; having considered the argument from the analogy of other bankrupt acts, and the argument from convenience,—we are brought last to consider the cases which construe this section of the act of 1898. These decisions are both numerous and conflicting. The decisions of the circuit courts of appeals will first be dealt with.

In Re Gutwillig, the circuit court of appeals for the Second circuit affirmed an order of the district court for the Southern district of New York enjoining the assignee under a general assignment from disposing of the assigned property of the respondent in an involuntary petition until after adjudication. The injunction was sought by creditors, not by a trustee, but, if the district court has jurisdiction to deal with property in the possession of a third party which is alleged to belong to the bankrupt's estate when the proceeding is instituted by a creditor, and has not jurisdiction in like circumstances when the proceeding is instituted by a trustee, great confusion will obviously arise. Trustees seeking to recover the bankrupt's property will be much given to making use of creditors' names. The question of jurisdiction is not considerably discussed either in the opinion of the

court of appeals or in that of the court below. It was said by the court of appeals, however, that:

"If the general assignment made by the alleged bankrupt would, in the event of an adjudication of bankruptcy, be treated as void as against the trustee of his estate, the order enjoining the assignee from disposing of or interfering with the property transferred pending the hearing was a proper and expedient exertion of the authority conferred upon courts of bankruptcy by clause 15, § 2, of the present act." 34 C. C. A. 377, 92 Fed. 337. See Id. (D. C.) 90 Fed. 475.

In Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325, the circuit court of appeals for the Eighth circuit confirmed the action of the district court for the Eastern district of Missouri in directing the marshal to take possession of the property of the respondent in an involuntary petition, which had been conveyed by general assignment. The question of jurisdiction had been raised, and elaborately discussed by the learned judge of the district court. In re Sievers (D. C.) 91 Fed. 366. Judge Adams there stated his opinion that section 23b was a limitation upon the jurisdiction of the circuit court only, and did not affect the jurisdiction of the district court. Without expressly affirming this doctrine, the circuit court of appeals, after speaking with apparent approbation of the careful consideration given to the case by the district judge, went on to say that:

"The trial court, in our judgment, pursued the proper course, and took proper steps to recover the assigned property from the assignees, and preserve it for the time being, until the assignor should be adjudicated a bankrupt, and a trustee had been selected by the creditors. Full warrant for all that was done in this circuit is to be found in section 2 of the act, which empowers courts of bankruptcy in substance to appoint receivers or the marshals upon application of parties in interest, to take charge of the property of bankrupts after the filing of petitions against them, for the preservation of their estates, and to make such orders, issue such process, and enter such judgments as may be necessary for the enforcement of the provisions of the act."

It will be perceived that the court of appeals, while not expressly concurring in the reasoning of Judge Adams, yet held distinctly that the court of bankruptcy had jurisdiction of a suit or controversy between the creditors of a respondent in an involuntary petition and his general common-law assignee.

In Carriage Co. v. Stengel, 37 C. C. A. 210, 95 Fed. 637, the circuit court of appeals for the Sixth circuit affirmed the action of the district court by which the general common-law assignee of the respondent to an involuntary petition was enjoined from disposing of the assets in his hands, and required to hold them subject to the order of the court of bankruptcy. The question of jurisdiction appears to have been raised, and the court said:

"It is next objected in argument and the briefs, though we do not find an assignment of error specifically directed to the point, that the assets of this defendant bankrupt are in the hands of the assignee for the benefit of creditors, subject to the orders of the probate court; that the district court in bankruptcy cannot obtain jurisdiction to administer the assets which are in the course of administration, and in the possession of officers of other courts. If this objection were to be sustained, it would seriously embarrass the enforcement of the bankruptcy law, and make it subordinate to the state insolvency and assignment laws, wherever an insolvent debtor who had committed an act of bankruptcy had placed his assets in the hands of the assignee acting by state law under the direction of the probate court. It is generally true that,

as between courts of concurrent jurisdiction, the court which first obtains possession of the res must retain possession of it until the res has been finally disposed of, and any one else interested in the res must apply to that court if he desires relief with respect to the property in the possession of that court. But, as between district courts sitting in bankruptcy and state courts for the administration of insolvent estates, there is no concurrent jurisdiction. The constitution of the United States, by giving to congress the power to pass uniform bankruptcy laws, gives to the courts in which congress shall vest this power paramount jurisdiction in bankruptcy proceedings. The orders in bankruptcy are, therefore, superior to those of a state insolvency court. Section 720, which forbids a court of the United States from enjoining proceedings in a state court, expressly excepts bankruptcy proceedings. This is the plain intimation, by federal and paramount law, that, where a federal bankruptcy court shall take jurisdiction, there the state insolvency court must yield. Hence it is that the assignee for the benefit of creditors of the defendant company, the grantee in the deed which is by the federal law an act of bankruptcy, may be made a party in the bankruptcy court, and may be required to hold the assets of the bankrupt subject to the order of the district court in bankruptcy."

It will be perceived that the court of appeals in this case was clearly of opinion that the district court has jurisdiction to restrain and control a general assignee, even though that assignee is acting under the state law, and under the direction of the probate court. It is true that the proceedings in Carriage Co. v. Stengel were instituted by the creditors, and not by the trustee, but the language of the opinion shows plainly that the court would have taken jurisdiction of a similar suit if begun by the trustee in bankruptcy.

In Re Francis-Valentine Co. (D. C.) 93 Fed. 953, same case on appeal, 1 Nat. Bankr. N. 529, 36 C. C. A. 499, 94 Fed. 793, the circuit court of appeals for the Ninth circuit dismissed a petition to review the action of the district court for the district of Northern California, in enjoining the sheriff from interfering with the trustee's possession of property alleged to belong to the bankrupt, the property being held by the sheriff under a writ of attachment. The question of jurisdiction was distinctly raised and well considered, and the court said as follows:

"In support of the first contention the petitioner cites and relies upon certain cases, of which the principal is Marshall v. Knox, 16 Wall. 551, 21 L. Ed. 481. In that case a lessor of the bankrupt had caused the sheriff, under a writ of provisional seizure, to take possession of certain property of the bankrupt, which the lessor claimed the right to hold as a pledge for the payment of rent which was due him. It was held that the district court, sitting in bankruptcy, had no jurisdiction to proceed by rule to take the goods from the possession of the sheriff. The court, referring to the seizure of the goods, said: 'The landlord claimed the right thus to hold possession of them until his rent was satisfied. This claim was adverse to that of the assignee.' These words, quoted from the opinion, fully explain the ground of the decision. It was because the claim was adverse to that of the assignee. In the present case the sheriff had possession, not in opposition to the right of the bankrupt, nor in antagonism to its title, but his possession was based entirely upon the assumption that the title was in the bankrupt. Upon the adjudication of bankruptcy, the sheriff's right to the possession terminated, for the writs were dissolved; and upon the appointment of a trustee in bankruptcy the right to the immediate possession vested in the latter. There was no question of conflicting claims to be adjudicated by the district court. The question is purely one of the respective rights of the sheriff and of the trustee of the estate of the bankrupt."

So far as the question of jurisdiction is concerned, In re Francis-Valentine Co. is on all fours with the case at bar.

In Re Abraham, 35 C. C. A. 592, 93 Fed. 767, the circuit court of appeals for the Fifth circuit held that the trustee in bankruptcy cannot, by summary proceeding in the district court, recover from the bankrupt's general assignee property covered by the assignment, but must proceed in a state court, unless the circuit court is open by reason of diverse citizenship. From this part of the decision Judge Parlange dissented. So far as the opinion of the majority of the court is concerned, In re Abraham is opposed to the contention of the trustee in this case. No cases other than the five just cited, bearing upon the question, have been found to be decided in any circuit court of appeals. In Re Richards, 37 C. C. A. 634, 96 Fed. 935, it seems that the jurisdiction was consented to, and the question was not discussed. It follows, therefore, that the decision of the court of appeals for the Ninth circuit, the language of the court of appeals for the Sixth circuit (and probably the decision also), the strong analogy of cases decided in the Second and Eighth circuits, and the dissent of one judge in the Fifth circuit, favor the contention of the trustee in this case, while the decision of the majority of the court in the Fifth circuit is opposed to it. The weight of authority is manifestly much in favor of the court's jurisdiction in this case.

The decisions of the various district courts, by a considerable majority, sustain the same view. See In re Brooks (D. C. Vt.) 91 Fed. 508; In re Smith (D. C. Ind.) 92 Fed. 135, 139; Robinson v. White (D. C.) 97 Fed. 33; Carter v. Hobbs (D. C.) 92 Fed. 594; Id., 94 Fed. 108; Keegan v. King (D. C. Ind.) 96 Fed. 758; In re Pittelkow (D. C. Wis.) 92 Fed. 901; In re Kletchka (D. C. N. Y.) Id. 901; In re Baudouine (D. C. N. Y.) 96 Fed. 536; In re Kenney (D. C. N. Y.) 1 Nat. Bankr. N. 401, 95 Fed. 427; In re Nathan (D. C. Nev.) 92 Fed. 590; In re Fellerath (D. C. Ohio) 1 Nat. Bankr. N. 292, 95 Fed. 121; In re Booth (D. C. Ga.) 96 Fed. 943; In re Kimball (D. C. Pa.) 97 Fed. 29; Trust Co. v. Benbow (D. C. N. C.) 96 Fed. 514; In re Fixen (D. C. Cal.) Id. 748; In re Newberry (D. C. Mich.) 97 Fed. 24.[1] These cases are not all of precisely equal application, but commonly by the actual point decided, and always, either by that or by the language of the several opinions, they support the district court's jurisdiction in this case. Opposed to them, and agreeing more or less with the majority of the court in Re Abraham, are as follows: In re Kelly (D. C. Tenn.) 91 Fed. 504; In re Rockwood (D. C. Iowa) Id. 363; In re Buntrock Clothing Co. (D. C. Iowa) 92 Fed. 886; Hicks v. Knost (D. C. Ohio) 94 Fed. 625; Mitchell v. McClure (D. C. Pa.) 91 Fed. 621; Burnett v. Mercantile Co. (D. C. Or.) Id. 365; In re Franks (D. C. Ala.) 95 Fed. 635 (expressly following In re Abraham).

In the case at bar the proceedings are instituted by the trustee in bankruptcy, and the respondent is the attaching creditor. Between the latter and the bankrupt there is no controversy. The bankrupt could not have brought this action. To paraphrase the language of the court of appeals in Re Francis-Valentine Co., the creditor has possession, not in opposition to the right of the bankrupt, nor in

---

[1] So Murray v. Beal (D. C., Utah) 97 Fed. 567, printed since In re Hammond was decided.

antagonism to its title, but entirely upon the assumption that the title was in the bankrupt. Upon the adjudication of bankruptcy the creditor's right to the possession terminated, for the writs were dissolved, and upon the appointment of a trustee in bankruptcy the right to the immediate possession vested in the latter. There is no question of conflicting claims to be adjusted by the district court. Whether, therefore, what has been called the "first" or the "third" construction of section 23b of the bankrupt act be the correct one, in either case this court has jurisdiction of these proceedings begun by the trustee.

It may be urged that the difference between the above-mentioned first and third constructions of subsection "b" is entirely illusory, and that, if the court of bankruptcy has jurisdiction in this case, where the bankrupt could not have brought suit himself, it will be practically impossible to draw a line which will bar this court from jurisdiction of those suits brought by the trustee which the bankrupt could have brought himself if bankruptcy proceedings had not supervened. This attempt to show that the "third construction," so called, is an untenable compromise between the first and second constructions, is made as an argument in favor of the second construction, on the assumption that the first construction is certainly untenable, and that we are, by the exclusion of the third, shut up to the second. There are great difficulties, indeed, in drawing a line to separate the two classes of suits mentioned. If the district court has jurisdiction of suits which the bankrupt could not have brought, while it has no jurisdiction of suits which the bankrupt could have brought,—suits in which the claim is adverse, to use the language of the court in Re Francis-Valentine Co.,—then the defendant in any proceeding in this court, by setting up in his answer a title wholly adverse to that of the bankrupt, will oust the jurisdiction of the district court until the defendant's asserted title adverse to that of the bankrupt has been passed upon in the state court. If this be the law, it may be supposed that defendants in suits brought in the district court by a trustee will usually avail themselves of the subterfuge of an adverse claim. Certainly it would not be convenient to try in one court the defense of a party which is adverse to the bankrupt, and in another court another defense of the same party which is not adverse to the bankrupt. The two defenses would, not infrequently, be inseparable. This argument against the third, or compromise, construction is re-enforced by the language of subsection 23b itself. That construction of the subsection, as has been said, permits the trustee to bring in a district court suits against third persons which the bankrupt could not have brought, but, where the suit could have been brought by the bankrupt, limits the trustee to the state court. This is not the reading of the language. Subsection "b" does not read, "Suits by the trustee which could have been brought by the bankrupt shall be brought only in the courts where the bankrupt might have brought them," but "Suits by the trustee [presumably all suits] shall be brought only in the courts where the bankrupt might have brought them if proceedings in bankruptcy had not been instituted." This and other arguments that it is impossible to maintain

the third, or compromise, construction, are of weight, but, instead of making for the second construction of the subsection, they may rather make for the first, and may lead federal courts which, like the courts of appeals already mentioned, have taken jurisdiction of proceedings similar to that brought in this case, to go further, and take jurisdiction of all proceedings begun by a trustee to collect his bankrupt's estate. However that may be, in this case the court is not called upon to choose between the first and third constructions, but to determine only that, where the suit could not have been brought by the bankrupt, where the respondent is not an adverse claimant, as those words were used in Re Francis-Valentine Co., the district court has jurisdiction. No opinion is expressed concerning a suit brought against "an adverse claimant." It should be observed that the creditor in this case made no objection to the form of the trustee's proceedings as by summary process, and not by plenary suit.

2. Did the property in question pass to the trustee by virtue of the bankrupt act? The trustee rests his claim upon section 67c, cl. 3, and section 70a, cl. 5. It is more convenient first to consider the latter provision, which reads substantially as follows: "The trustee shall be vested with the title of the bankrupt to all property which might have been levied upon and sold under judicial process against the [bankrupt]." By virtue of Pub. St. Mass. c. 147, § 11, as has been said, the property in question might have been levied upon under judicial process,—that is, by attachment on mesne process against the bankrupt,—and so it would seem to be covered by the provision just stated. The bankrupt's counsel contends, however, that this provision applies only to property which belonged to the bankrupt, and that it does not pass to the trustee any property not belonging to the bankrupt, though that property might have been attached upon mesne process against him. Thus broadly stated, this contention is inadmissible. Clause 5 says nothing about property of the bankrupt, or of the bankrupt's title thereto. The word "property" is used without qualification so far as clause 5 is specifically concerned. The only qualification is found in the earlier words, "the title of the bankrupt," which apply to clause 4 (property transferred by the bankrupt in fraud of creditors) as well as to clause 5. Now, it would be absurd to limit the application of clause 4 to property belonging to the bankrupt. By the very terms of the clause, the property covered by it does not belong to the bankrupt, and the bankrupt has no title therein. Probably the words "title of the bankrupt" are meant to cover cases in which the bankrupt has an estate in property less than absolute ownership, like an estate for life or for years. If the limitation suggested be manifestly inapplicable to clause 4, there is no reason why it should be held to apply to clause 5. Clause 5 was not found in the bankrupt act of 1867, and was, not improbably, suggested by Pub. St. Mass. c. 157, § 46, which it follows pretty closely in many respects. The last-mentioned provision is substantially as follows: "The assignment shall vest in the assignee all the property of the debtor which might have been taken on execution upon a judgment against him." Under the Massachusetts law, it has been held that not all property which could have been attached by some one of

the bankrupt's creditors passes to his assignee. Audenried v. Betteley, 5 Allen, 382; Holmes v. Winchester, 133 Mass. 140; Sibley v. Bank, Id. 515; Low v. Welch, 139 Mass. 33, 29 N. E. 216. Upon these cases the contention of the creditor is mainly based, and it is necessary briefly to examine them.

In Audenried v. Betteley it was held that an assignment under the insolvent laws did not vest in the assignee property which had been put into the hands of the debtor for the fraudulent purpose of giving him a false credit, although the transferror of this property might be estopped from contesting its attachment in the bankrupt's hands by a creditor who had been induced to give the bankrupt credit because of his apparent ownership of the property. Mr. Justice Hoar said that this property could not be regarded as "the property of the debtor which might have been taken on execution upon a judgment against him." "An estoppel in pais on the ground of fraud is personal to the particular creditor defrauded, and does not pass the property so as to inure to the benefit of creditors generally." The learned justice then stated that property conveyed in fraud of creditors, though no longer the property of the debtor, might be taken by creditors on execution, and so would pass to the assignee in insolvency. "But the defect in this analogy is," he said, "that the property which a debtor attempts to convey in fraud of creditors has once been his. When the conveyance is avoided by a creditor, or by one succeeding to the rights of a creditor, in the mode prescribed by law, it is the property of the debtor which is to be dealt with." It is to be observed that the property in question in Audenried v. Betteley was not subject to attachment by the creditors of the bankrupt generally, but only by a particular creditor, who, having been induced to act in reliance upon the bankrupt's apparent ownership, should avail himself of the estoppel thereby created.

In Holmes v. Winchester a wife had released her dower in her husband's land in consideration of an agreement by him to transfer to her shares in a corporation, the husband being solvent at the time of making the agreement. The transfer was made after he had become insolvent, and it was held that his assignee in insolvency could not avoid the transfer. The shares could not have been attached as the bankrupt's property.

In Sibley v. Bank it was held that the beneficial owner of stock in a national bank, who had transferred it to another person in trust, could recover the stock after the insolvency of the transferee, and against his assignee in insolvency, though the stock, as transferred, stood in the name of the transferee, without mention of the trust, and although it had been attached by a creditor as the property of the transferee. The court held that the right of the attaching creditor, whether arising by statute or otherwise, was by way of estoppel, inasmuch as a creditor with notice of the trust could not have attached the stock as the transferee's property. Following Audenried v. Betteley, the court therefore held that the title to the stock did not pass to the assignee. The case of Low v. Welch followed the principle laid down in Sibley v. Bank, though the property there in question was land, and not bank stock.

The principle underlying these decisions, so far as they relate to the questions involved in this case, may be stated thus: The assignee in insolvency does not take the title to property which can be attached as the property of the bankrupt, where the attachment can be upheld only through an estoppel in favor of a particular attaching creditor existing against the true owner of the property. "This was not property which could be taken on execution by creditors generally, but only by creditors without notice." 139 Mass. 34, 29 N. E. 217. See Lowell, Bankr. § 349. In the case at bar there is no question of estoppel. Under Pub. St. Mass. c. 147, § 11, a creditor with notice of the wife's right to this property could attach it just as effectively as a creditor without notice. This was property which could be taken on execution by creditors generally, and not only by creditors without notice, to paraphrase the statement just quoted of Mr. Justice Holmes in Low v. Welch. Even under the Massachusetts insolvent law, therefore, this property would pass to an assignee in insolvency, and the phraseology of the bankrupt law is quite as unfavorable to the contention of the attaching creditor as is the language of the insolvent law.

A consideration of general principles supports the conclusion just reached from an examination of the decided cases. To permit property to be attached and taken on execution by any individual creditor of a bankrupt is to permit precisely that which the bankrupt law was passed to prevent, viz. inequality of payment among the bankrupt's unsecured creditors, and a scramble on their part to secure advantage and priority. A law which permits each and every creditor to attach property as if it belonged to his debtor (though in fact the title is in some one else) exists because the lawmaking power thinks it just that the property should be applied to the payment of the debtor's obligations, and there should be no difference whether payment be sought by way of attachment proceedings or in bankruptcy.

Under section 67c, cl. 3, also, the rights of the trustee must prevail. It is there provided that a lien obtained in or pursuant to any suit or proceedings at law or in equity which was begun against a person within four months before the filing of the petition in bankruptcy by or against such person, shall not be dissolved if the dissolution of such lien would militate against the best interests of the estate of such person, but that the trustee of the estate for the benefit of the estate shall be subrogated to the rights of the holder of such lien, and empowered to perfect and enforce the same in his name as trustee, with like force and effect as such holder might have done had not bankruptcy proceedings intervened. We have here to deal with a lien obtained in a suit which was begun within four months of the filing of the petition. That the dissolution of this lien would militate against the best interests of the estate is evident, for this reason, if for no other; that it would deprive the attaching creditor of his security, and so would increase his claim as an unsecured creditor upon the rest of the bankrupt's estate. Following the plain language of the section, I must hold that the trustee in this case is subrogated to the rights of the holder of the lien. As the holder of the lien, the attaching creditor, has sold some of the property attached, and holds the proceeds thereof, while holding some of the attached property

unsold, I think I am justified, under the provision just stated, in awarding to the trustee possession of the proceeds and property aforesaid, though it may be that the trustee's petition is not framed in the best possible manner to attain this result. Under the circumstances stated in Sibley v. Bank, where the stock in question had been attached, it was held that any right which the creditor there had to attach the stock as the property of the insolvent was a right personal to the particular creditor, arising from the relation between him and the beneficial owner of the stock, which personal right did not pass to the assignee in insolvency. The right of the attaching creditor in this case is in no way personal to him. Any creditor of the bankrupt could have attached the property in question, and, except for the rights of the trustee in bankruptcy, could attach it now, subject to the existing attachment, unless the wife's certificate has been recently recorded. If property is held under an attachment which might have been made by any of the bankrupt's creditors, and was made within the time limited in the bankrupt law, it is proper that the trustee should be subrogated to the attaching creditor's rights.

It follows, therefore, that this court has jurisdiction of this proceeding brought by the trustee, and that the trustee is entitled to the property in question.