## Case No. 2,801.

### In re CLARK.

[9 Blatchf. 372;[1] 6 N. B. R. 403.]

Circuit Court, D. Vermont. Jan., 1872.[2]

BANKRUPTCY — POWER OF THE DISTRICT COURT— SUMMARY JURISDICTION — MODE OF REVIEW — TESTIMONY IN EQUITY.

1. The district court has, under the 1st section of the bankruptcy act of March 2d, 1867

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Samson v. Burton, Case No. 12,286.]

(14 Stat. 517), power to prohibit any proceeding in a state court by a creditor, to liquidate and enforce a lien on the property of a debtor who is adjudged a bankrupt by such court. Such power is to be exercised summarily, and does not require a formal suit.

[Cited in Re Ulrich, Case No. 14,328; Re Brunquest, Id. 2,055; Re Duncan, Id. 4,131; Re Cooper, Id. 3,190; Re Mead, 58 Fed. 312.]

2. When the property affected by a lien is confessedly the property of the bankrupt, and has passed to the assignee, and it only remains to ascertain and liquidate the alleged lien, the summary jurisdiction of the district court is entirely adequate.

[Cited in Re Duncan, Case No. 4,131; Re Casey, Id. 2,495; Re Sims, Id. 12,888.]

3. The power of the bankruptcy court to give further relief, in protection of the estate of the bankrupt, on a renewed application, on new or further evidence, after it has made one order in the premises, considered and sustained.

[Cited in Phelps v. Sellick, Case No. 11,079; Re Hufnagel, Id. 6,837.]

4. Semble, that the mode of review of an order made in the exercise of such summary jurisdiction, is not by an appeal under the 8th section of the bankruptcy act.

5. The testimony, in a suit in equity, may be taken orally, in open court.

6. An order of the district court, restraining an alleged creditor of the bankrupt's from further prosecuting an action in a state court, in which he had attached property of the bankrupt's, affirmed.

[Quoted in Hudson v. Schwab, Case No. 6,835.]

[Appeal from the district court of the United States for the district of Vermont.]

In bankruptcy. One Burton, many months before proceedings were commenced in bankruptcy against [Alanson M.] Clark, had commenced an action in the state court, against the latter, on book account, for $150,000, and therein had attached property of Clark, to be held to satisfy any judgment he might recover in that action. He had also recovered a judgment for $46,000, against Clark, on a set-off in another action, pending at the same time, and for this judgment he had no security. Clark, becoming greatly embarrassed, and, in fact, insolvent, other attachments were levied on his property. In January, 1870, by consent, the judgment for $46,000 was reversed, and soon thereafter an agreement was made by Clark with Burton, that all suits between Clark and Burton, (of which there were several,) except the action on book account, should be discontinued, and that, in such last named action, Burton might prove all his demands against Clark, without objection as to the form of action, and without any claim that they or any of them were barred by the statute of limitations. Clark was adjudged a bankrupt in February, 1870, and Samson, his assignee in bankruptcy, applied to the district court to enjoin Burton and Clark from acting under that agreement, and to stay the prosecution of the action on book account, on the ground that the arrangement between Burton and Clark was collusive and fraudulent, and made to give Burton an unlawful prefer-

ence; and an order was made forbidding the parties from making any use of the agreement, but not forbidding the prosecution of the suit. [Case No. 12,285.] On a review of that order in the circuit court, it was affirmed, and leave was given to make a further or renewed application to the district court, upon new or additional evidence. [Case unreported.] Thereupon, the assignee presented the petition now in question, to the district court, praying an injunction against the prosecution of the action on book account in the state court. The bankrupt and Burton appeared and answered. The issues were tried by the district court, by the examination of witnesses and the taking of proofs orally before the court. The proofs were deemed to establish that the fraudulent scheme or contrivance to give to Burton a preference was entered into before the reversal of the judgment above mentioned; that that reversal by consent was in execution of that scheme; that its design was to remove an obstacle to proving, in the action on book account, the matters claimed as a set-off, and determined by that judgment, and so, by letting them, with other claims, into the action on book account, waiving all forms and the statute of limitations, bring them within the scope of the attachment lien, whereas, in truth, and without such reversal, Burton had not and could not gain any security therefor; and that, from a period shortly before that reversal of the judgment, Clark and Burton, who were brothers in law, were acting throughout in collusion, and with the fraudulent design to make use of the attachment lien acquired in the action on book account, as a means of sweeping into the hands of Burton so much of the bankrupt estate as possible, by the use of claims theretofore unsecured, and claims outlawed, collusively exaggerated, or fictitious, and not to be seriously contested by Clark, and so pervert the action to a fraudulent use, to the prejudice of other creditors, if not to deprive them of any share of the estate. The court, thereupon, made an order restraining Burton from further prosecuting the action on book account, in the state court. [Case No. 12,286.] From this order, Burton brought an appeal to this court, in the form and manner prescribed by the 8th section of the bankruptcy act of March 2, 1867 (14 Stat. 520), as if the order had been made in a suit in equity, proceeding on pleadings and proofs to a decree. On the hearing of the appeal, the assignee moved to dismiss it, on the ground that the order was made in the exercise of the summary jurisdiction given to the district court by the 1st section of said act, and could only be reviewed in accordance with the provisions of the 2d section.

George F. Edmunds and Edward J. Phelps, for assignee.

Luke P. Poland, Reuben C. Benton, and Heman S. Royce, for Benton.

WOODRUFF, Circuit Judge. In the conclusions of the district judge upon the questions of fact, I concur. I shall, therefore, content myself with stating the questions raised on this appeal, and, very briefly, my conclusions thereon.

It is contended, for the appellant: (1.) That the district court had no power to proceed summarily, in this case; (2.) that the assignee is concluded by a former order, which will be hereafter referred to; (3.) that this proceeding is, in substance, a suit in equity, and an appeal, under the 8th section, is proper; (4.) that it was irregular and erroneous to try the questions of fact by the examination of witnesses in open court, but the testimony should have been taken [and reduced to writing] [3] before an examiner [which is claimed to be prescribed by the rules of the supreme court in equity]. [3] (5.) that neither the proofs, nor the law applicable thereto, warranted the order, in any form of proceeding.

(1.) I have no doubt whatever of the power and jurisdiction of the district court, under the 1st section of the bankrupt law, to assume the entire administration of the estate of the debtor, to determine all questions touching the existence of liens thereon, to ascertain and settle the amount of such liens, and to make provision for the liquidation and settlement thereof; and, as incidental to this, it has ample power to restrain a claimant of such lien from proceeding elsewhere to enforce his lien. Language more comprehensive can hardly be suggested than is employed in the act, giving power to collect all the assets, to ascertain and liquidate the liens and other specific claims thereon, adjust the various priorities, and marshal and dispose of the different funds and assets, so as to secure the rights of all parties. To this end, power is given to compel obedience to all orders, by process of contempt and other remedial process. The entire estate is brought within the reach of these comprehensive powers, by vesting it in the assignee appointed by the court, to administer it, under the direction of the court. Nor can it make any difference with the power of the court over this subject, that the lien or alleged lien is inchoate, and incapable of execution, until the amount secured thereby is ascertained and settled. Ascertainment and liquidation are expressly authorized; and the subsequent provisions of the act, relating to creditors having mortgages, liens or other security, show how fully the whole administration of the estate is confided to the court. True, it does not necessarily follow, that, in all cases, the court must prohibit any proceeding in the state court for the benefit of a creditor having a lien. There is, however, no want of power. Often, it is quite convenient, and, ordinarily, it may be quite desirable, to permit pending actions to pro-

---

[3] [From 6 N. B. R. 403.]

ceed, so far as to ascertain the amount due. In one case,—In re Iron Mountain Co. [Case No. 7,065],—a foreclosure of a mortgage in the state court was permitted, though begun after petition filed in the district court, and, under the special circumstances of the case, I deemed it proper, on review in this court, to affirm the order. But, the power to control the creditors in this respect is, I think, clearly given. Two considerations illustrate the importance of the power, which are especially applicable to liens by attachment: 1. Without such power, there is no adequate protection to the other creditors, against collusion between the bankrupt and the claimant, not even aided by the authority given to the assignee to defend. 2. The early settlement of the estate may sometimes require that the court in bankruptcy should take the determination of claims which are in dispute into its own hands. I deem it equally clear, that this power conferred by the 1st section is to be summarily exercised, and does not require a formal suit. Indeed, whatever powers are given by the 1st section are designed to be exercised summarily.

There are cases, in which, in order to bring the property pursued by the assignee within the control of the court or its assignee, or to remove obstacles to its administration, it may be necessary for the assignee to prosecute an action at law or a suit in equity; and such cases are provided for in the 2d section. But, when the property affected by a lien is confessedly the property of the bankrupt, and has passed to the assignee, and it only remains to ascertain and liquidate the alleged lien, the summary jurisdiction of the district court is entirely adequate.

(2.) On a prior petition, setting out some of the matters alleged in the present petition, the district court had made an order enjoining Burton from making any use of a written agreement entered into between him and the bankrupt, on the ground that it was a collusive and fraudulent arrangement, for the purpose of securing to Burton a preference over other creditors, in respect of certain claims which had already been merged in a judgment, or barred by such judgment, and for which, so long as such judgment was in force, Burton had no security. But such order did not invalidate or impeach a previous reversal, which had been entered by consent, of that judgment, because it did not then sufficiently appear that such collusive and fraudulent arrangement was entered into prior to such reversal, or that such reversal was part of the scheme devised to secure to Burton a preference. Shortly after such reversal, the said written agreement was entered into between Burton and the bankrupt, which, if carried into execution, would have permitted Burton to prove all claims which he had or alleged against the bankrupt, in an action "on book," in which he had attached the bankrupt's property, and thus secure an apparent lien, and, pos-

sibly, an actual lien, for the amount due to him upon the said claims, for which, so long as the said judgment was in force, he had no security. The former order of the district court left to Burton such right to prove the said claims, as the laws of Vermont might give to him. That order, this court, on review, affirmed, but leave was given to the assignee to renew his application for other or further order in the premises, upon new or additional evidence. Thereupon, the present petition was presented to the district court.

The suggestion, that the decision upon the former hearing was final and conclusive, as res adjudicata, is without foundation. Even in a formal suit in equity, the court may qualify the decree, so that it shall not operate to prevent a new suit; and nothing is more common, in disposing of motions, than to give leave to renew, or apply, upon new or further evidence, for additional relief. The highly equitable and remedial powers conferred on the court in bankruptcy are not less free from restriction, nor are they hampered by such technical rules as will prevent the doing of what is just and for the protection of the estate, even if it requires the revocation of an order once made.

(3.) The proceeding in question was not a formal suit, but was a summary proceeding. It does not conform, in the manner of its institution, the manner of its prosecution, or in its form, to a suit in equity. True, the facts stated and the relief sought were like, in some of their features, to bills for analogous relief in suits in equity; but that proves nothing. These same facts were the proper ground of a summary application, and for the relief which it was competent for the court summarily to grant. If these proceedings are compared with the rules prescribed to the courts of the United States in equity, relating to the commencement of suits, the form of bills, appearance therein, &c., &c., no question will, I think, remain on this point. It would seem to follow, that the mode adopted to obtain a review of the order of the district court, was not warranted. It will, however, be more satisfactory to the parties, if the case is disposed of upon grounds which import that no error was committed in the order appealed from, and, also, upon grounds alike applicable to the proceeding, if it were regarded as a suit in form; and I therefore consider the other points.

(4.) It was not ground for a reversal of the order, that the witnesses were orally examined before the court. The rules of the supreme court have not taken away the power which the court has, as a court of equity, to have the testimony of the witnesses taken in open court. That power is expressly reserved in the seventy-eighth rule, which implies its existence and its perpetuation. It is there left to the discretion of the court.

(5.) I have, perhaps, already sufficiently expressed my views of the merits. The conclusions of the district judge were, I think,

warranted by the evidence. The power of the court over the subject I have already stated. Independent of any question of actual corrupt design, the arrangement to remove the impediment of an actual adjudication, and bring the claims therein determined under the operation of the attachment in the action "on book," was an attempt to give an illegal preference in fraud of the bankrupt law. On that subject I have already expressed my opinion, on the former review, above mentioned. It is not enough to say, that, if the debt were permitted to be established in the pending action, the court could control the execution of the judgment. I would not express any doubt of that; but it will save embarrassment, expense, and any apparent effect of a formal judgment, to be avoided by the assignee, to arrest the execution of the fraudulent scheme. And this is especially true, in view of the evidence of actual fraudulent collusion, which is deemed established.

The order should be affirmed.