## In re SMITH et al.

### (District Court, D. Indiana. March 2, 1899.)

#### No. 159.

1. BANKRUPTCY—SUSPENSION OF STATE INSOLVENCY LAWS.

   The statute of Indiana (Rev. St. 1881, §§ 2662–2683, inclusive; 2 Burns' Rev. St. 1894, §§ 2899–2920, inclusive) regulating assignments for the benefit of creditors, and investing the circuit courts of the state with jurisdiction and control over the administration of estates so assigned, including the proof and allowance of claims, the collection and distribution of assets, and the discharge of the assignee, is an insolvency law, and its operation was suspended by the enactment of the bankruptcy act of 1898.

2. SAME—ASSIGNMENT UNDER STATE LAW VOID.

   Under Bankruptcy Act 1898, § 3, declaring that it shall be an act of bankruptcy if a person shall have "made a general assignment for the benefit of his creditors," such an assignment, made in pursuance of a state insolvency law which is rendered inoperative by the enactment of the bankruptcy law, by a debtor who is afterwards adjudged bankrupt, vests no title in the assignee, as against creditors in the bankruptcy proceedings; and any acts of the assignee touching the estate of the bankrupt, or of the state court in the administration of the same, are null and void.

3. SAME—PROPERTY IN POSSESSION OF ASSIGNEE.

   Where an insolvent debtor makes an assignment for creditors in pursuance of the terms of a state statute, the operation of which is suspended by the national bankruptcy law, and is afterwards adjudged bankrupt, the court of bankruptcy has power, on a summary petition, to order the assignee to surrender the property in his possession to a receiver appointed by the court of bankruptcy.

4. SAME—JURISDICTION OF BANKRUPTCY COURT EXCLUSIVE.

   Where an assignment for the benefit of creditors has been made in pursuance of a state insolvency law, the operation of which was suspended by the enactment of the national bankruptcy law, and the assignee is in possession of the estate under the authority of the state court, and the assignor is afterwards adjudged bankrupt, there is no such con-

current jurisdiction, or prior right of possession, in the state court, as will prevent the bankruptcy court from assuming exclusive jurisdiction of the estate of the bankrupt.

In Bankruptcy. On petition of certain creditors for an order requiring the assignee of the bankrupts, under a previous general assignment for the benefit of their creditors, to surrender the assets and estate in his hands to the receiver of the court of bankruptcy.

Griffiths & Potts and Cohen & Mack, for petitioning creditors.

Byron K. Elliott and W. F. Elliott, for respondent.

BAKER, District Judge. On February 24, 1899, certain creditors filed their petition in involuntary bankruptcy against Aaron J. Smith and Josephus G. Dodson, composing the firm of Smith & Dodson. The petition alleged the insolvency of said firm and of each member thereof, and stated a single act of bankruptcy. The allegation touching this act of bankruptcy is as follows:

"And your petitioners further represent that said Aaron J. Smith and Josephus G. Dodson, partners as aforesaid, are insolvent, and that within four months next preceding the date of this petition the said Aaron J. Smith and Josephus G. Dodson, partners as aforesaid, committed an act of bankruptcy, in that they did heretofore, to wit, on the 28th day of January, 1899, make a general assignment for the benefit of their creditors to Edwin F. Hedges, of Lebanon, in Boone county, state of Indiana."

On February 25, 1899, said Smith and Dodson appeared in open court, in their own proper persons, and filed their written admission that they did on January 28, 1899, execute a deed of assignment for the benefit of their creditors, under the law of the state of Indiana, to Edwin F. Hedges, who, as such assignee, took possession of all their property, real and personal, and is now in possession of the same. Thereupon this court, as a court of bankruptcy, at once entered an order adjudging them bankrupts. As soon as such adjudication had been made, the petitioning creditors filed and presented to the court their petition against Edwin F. Hedges, as such assignee, asking that he be enjoined from disposing of or interfering with the assets and estate of the bankrupts, and that he show cause, if any he had, why he should not surrender and turn over to the receiver of this court the assets and estate of the bankrupts in his possession. This petition to show cause alleges, in substance, that on January 28, 1899, the bankrupts made a general assignment for the benefit of their creditors to said Hedges, who thereupon qualified as such assignee, and took possession of all the property of the bankrupts, and is now in possession of the same; that among the assets so in the assignee's hands are a valuable stock of general merchandise, accounts, notes, and other evidences of indebtedness due and owing to the bankrupts, as well as a number of tracts of land and other real estate belonging to them; that the assignment for the benefit of creditors was and is illegal, fraudulent, and void, under the act of congress relating to bankruptcies, now in force, and in force on the day when said assignment was made; that, on proceedings duly had, said Smith & Dodson have been adjudged bankrupts, on their written admission that they were insolvent and had executed a deed of gen-

eral assignment of all their property for the benefit of their creditors to said Hedges; that said Hedges is now in possession of said property of the bankrupts, without right, under said illegal and void assignment, and not otherwise. Prayer for a temporary restraining order, and that the assignee show cause why he should not surrender the property in his possession to the receiver of this court. On the filing and presentation of said petition the court issued a temporary restraining order, and an order to show cause, as prayed for. This order was duly served, and on the return day the assignee appeared, in person and by counsel, and admitted the matters and things set up in the petition to be true, and submitted the question whether, on the facts so admitted, the court could, in a summary manner, order a surrender of the property of the bankrupts in his hands as such assignee to a receiver appointed by this court.

The statute of this state (2 Burns' Rev. St. 1894, §§ 2899–2920, inclusive; Rev. St. 1881, §§ 2662–2683, inclusive) provides that any debtor or debtors in embarrassed or failing circumstances may make a general assignment of all his or their property in trust for the benefit of all his or their bona fide creditors, and all assignments hereafter made by such person or persons for such purpose, except as provided by the statute, should be deemed fraudulent and void. The debtor or debtors making a general assignment are authorized to select his or their trustee, who shall qualify and serve, unless the creditors representing in amount one-half of the liabilities petition the court for his removal and the appointment of another trustee. The administration of the debtor's estate so assigned is placed under the control and jurisdiction of the proper circuit court of the state. The statute provides for the conversion of the assets into money, the collection of debts due the insolvent, the proof of claims by creditors, the distribution of the proceeds arising from the property assigned among the creditors according to their respective priorities, and for the final settlement of the trust estate and the discharge of the trustee. There is no provision for the discharge of the insolvent debtor. This statute constitutes an insolvency law, and regulates the making of an assignment, which must embrace all the property of the debtor, as well as every step to be taken in winding up the estate of the bankrupt, to the distribution of its proceeds among those entitled to share therein, all to be administered in a state court possessed of general jurisdiction at law and in equity. It embraces the same persons and subject-matter as the bankruptcy act, and, if the state law still remains in force, every insolvent's estate may be administered in a state court, and must be so administered, if it first acquires jurisdiction, because, if the state statute continues in force, there would be two courts (state and national) possessing concurrent jurisdiction over the same person and the same subject-matter, and whichever of the two first acquired jurisdiction would retain it, and administer the estate of the insolvent, to the exclusion of the other. The bankruptcy act contemplates no divided jurisdiction. It would cease to possess any vital force or efficiency, if the state court, proceeding under our state insolvent law, may hold possession of the bankrupt's estate, collect in the debts, allow claims, and make final

distribution among those entitled to participate therein, leaving to this court nothing but the adjudication of bankruptcy and the discharge of the bankrupt. Such a construction is inadmissible, because it would render inoperative numerous express provisions of the bankruptcy act. The state statute and the bankruptcy act cannot stand together. The bankruptcy act is the supreme law of the land, enacted in pursuance of an express grant of constitutional authority; and, in so far as any state law is in conflict with it, such law is suspended and remains inoperative until the federal enactment is repealed. All matters embraced in the bankruptcy act must be controlled and governed by its provisions. Among these are the right and duty of the bankruptcy court to have insolvent estates settled in and by it, under and in accordance with the provisions of the bankruptcy act; to have acts of bankruptcy affecting the settlement of estates determined by it (section 3); to have the rights of debtors to file voluntary petitions, and of creditors to file involuntary petitions, determined by it (section 4); and to have liens and preferences governed by it (sections 60, 67). These and various other provisions of the bankrupt act affecting the conduct and rights of debtors and creditors are different from those found in the statute of this state touching general assignments. In my opinion, the operation of the state law is suspended, and the state courts are without any jurisdiction or authority to administer the estates of bankrupts or insolvents.

The fourth clause of section 3 of the bankruptcy act declares that the making of a general assignment for the benefit of creditors shall constitute an act of bankruptcy. The making of the assignment constitutes, ipso facto, an act of bankruptcy, without regard to the motive which prompted it. Declaring such assignment an act of bankruptcy amounts to a prohibition of the act. The assignee under the inoperative state law takes no title, as against the creditors by the deed of assignment; and all of his acts touching the estate of the bankrupt, as well as all acts by the state court in the administration of the same, are unauthorized and void, and will be treated as nullities wherever drawn in question. These consequences necessarily follow from the terms of the bankruptcy act, and this conclusion is supported by the following, among many cases in which the question is considered: In re Hathorn, Fed. Cas. No. 6,214; In re Bininger, Id. 1,420; In re Wallace, Id. 17,094; In re Washington Marine Ins. Co., Id. 17,246; In re Merchants' Ins. Co., Id. 9,441; Thornhill v. Bank, Id. 13,992; Manufacturing Co. v. Hamilton (Mass.) 51 N. E. 529; In re Bruss-Ritter Co., 90 Fed. 651; Lea v. George M. West Co., 91 Fed. 237. It follows that the assignee is a mere naked bailee for the creditors, without a shred of title or lawful authority to the possession of the bankrupts' estate; and it would certainly be strange if, when the bankruptcy court finds property in the possession of such a bailee, it may not in a summary way require him to surrender possession to the court which alone has the power to administer the estate. The fifteenth clause of section 2, which grants authority to the courts of bankruptcy to "make such orders, issue such process and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act," in my

judgment, confers ample authority on the court, in a summary way, to reduce into its possession property in the unauthorized possession of an assignee or receiver of a state court. If the property of the bankrupt is in the possession of a person who has a colorable title, as purchaser or otherwise, it may be that the court would not compel him, by a summary proceeding, to surrender the possession; but where the possession, and only right of possession, are under the authority of a state court by virtue of a general assignment for the benefit of creditors, no contestable question is presented. The possession of the assignee and of the state court are unauthorized, and it seems to me that this court may well hold, as it does, that their possession is held for the benefit of the creditors of the bankrupts and subject to the paramount authority and jurisdiction of this court. No question of concurrent jurisdiction, or of the conflict of jurisdiction, can possibly arise. The jurisdiction of the bankrupt court is supreme, it is exclusive, and the acts of the state court are unauthorized and void, because jurisdiction over the person and estate of the bankrupts is drawn to, and vested exclusively in, this court by the adjudication of bankruptcy. An order may be drawn directing the assignee to deliver up the property of the bankrupts to the receiver of this court.