BEAR et al. v. CHASE.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 317.

**1. BANKRUPTCY—JURISDICTION OF BANKRUPTCY COURT—INJUNCTION.**
Where the act of bankruptcy alleged in an involuntary petition, on which an adjudication is made, is that the debtor suffered certain creditors to obtain a preference through the levy of attachments on his goods, and failed to discharge such levy before sale, the court of bankruptcy has jurisdiction, upon a rule to show cause, entered in the bankruptcy proceedings, to enjoin the attaching creditors from the further prosecution of their attachment suits.

**2. SAME—RIGHTS OF ATTACHING CREDITORS.**
Attaching creditors of a bankrupt, whose levies constitute the preference on which the adjudication in bankruptcy is based, do not occupy the position of third persons in possession of property claimed to belong to the bankrupt, or adverse claimants dealing therewith, so as to render it necessary that proceedings against them should be by bill in equity or other plenary process.

**3. SAME—DISSOLUTION OF LIENS.**
Under Bankr. Act 1898, § 67f, providing that "all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt," where creditors levy attachments on the property of an insolvent debtor, and within four months thereafter he is adjudged bankrupt on a petition alleging, as an act of bankruptcy, that he suffered such creditors to obtain a preference by means of their attachments, the liens of such attachments are thereby dissolved.

**4. SAME—TITLE OF PURCHASER—DISPOSITION OF PROCEEDS.**
Where creditors sue out attachments against an insolvent debtor in a state court, and cause them to be levied on his property, and the same is sold by order of the court, being perishable, and the proceeds paid into court to await the determination of the suit, and within four months thereafter the debtor is adjudged bankrupt, the title of a bona fide purchaser at such sale will not be affected by the bankruptcy, but the proceeds of sale stand in lieu of the property sold, and may be claimed by the trustee in bankruptcy.

**5. SAME—STAY OF PENDING SUITS.**

Bankr. Act 1898, § 11a, providing that suits pending against a bankrupt may be stayed when "founded upon a claim from which a discharge would be a release," does not prevent the court of bankruptcy from restraining attaching creditors of the bankrupt from the further prosecution of their attachment suits in a state court, when the preference created by the levy of such attachments was the act of bankruptcy on wheih the adjudication was based, and the petition was filed within four months after the levy, even though the creditors' causes of action were such as would not be affected by a discharge in bankruptcy.

**6. SAME—JURISDICTION OF STATE COURT.**

Where creditors of an insolvent debtor sue out attachments on his property in a state court, and cause the same to be sold thereunder and the proceeds paid into court, and within four months thereafter he is adjudged bankrupt on a petition alleging such attachments to be preferential and to constitute acts of bankruptcy, an intervening petition filed by the trustee in bankruptcy in the state court should be limited to a demand for the proceeds of sale remaining in court; and an order of the bankruptcy court, permitting such intervention, but leaving the question of the effect and validity of the attachments to be determined in the state court, is erroneous.

On Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the District of South Carolina, in Bankruptcy.

This is an application to superintend and revise, in matter of law, certain orders made by the district court of the United States for the Eastern district of South Carolina, entered, respectively, on the 28th of January and the 10th of June, 1899, in the above-entitled involuntary bankruptcy proceeding, then pending in said court. The case is briefly this: The petitioners for revision, J. M. Bear & Co. and others, some 17 creditors in number of the bankrupt, James H. Rhodes, in the month of October, 1898, instituted their suits and sued out certain attachments in the court of common pleas, Florence county, S. C., and caused the attachments to be levied on said Rhodes' stock of goods. The judge of the court, by orders of the 14th and 15th days of October, 1898, entered in chambers, directed the stock of goods, thus levied on, to be sold on the 20th of October, 1898, because of their perishable character, and the money arising from the sale to be paid to the clerk of the court to await the future order of the court in the suits. The sale was duly made, and $6,800, the net proceeds arising therefrom, paid to the clerk of the said court. On the 1st day of November, 1898, certain creditors of the said Rhodes, to wit, George Pettigrew and others, some 20 in number, filed their petition in the district court of the United States for the district of South Carolina, praying that he be declared an involuntary bankrupt, alleging his insolvency, together with the necessary averments to give jurisdiction to the court, and particularly averring that the attachment creditors aforesaid had, in contravention of the bankrupt law, and within four months prior to the filing of their said petition, sought to procure a preference in the administration of the estate of the said bankrupt by reason of the issuance and levy of said attachments. Said petitioners further averred that the said Rhodes committed an act of bankruptcy by permitting the attachments to issue against him, and that his object was to give a preference among his creditors through legal proceedings, to wit, the said attachments, and that the same were not vacated or discharged within five days before the sale of said property. The petitioners further averred that the attachments were permitted, sought, and had, orders of sale procured, and sales made, in disregard of notice served upon said attaching creditors, advising them of the fact that a petition in bankruptcy would be filed against the said Rhodes on the 1st day of November, 1898, or as soon thereafter as counsel could be heard. Upon the filing of the petition of involuntary bankruptcy as aforesaid, an order to show cause was entered against the bankrupt, returnable on the 14th of January, 1899, and duly published in a newspaper in the city of Florence. On the 14th

of January, an order was entered in said cause, returnable on the 25th of January, requiring the attaching creditors aforesaid to show cause why they should not be restrained from prosecuting their suits in the state court aforesaid. To this latter rule the attaching creditors made answer, insisting, among other things, upon the validity of their attachments; averring that they were procured without any collusion with, and against the consent of, the said Rhodes; that they had no reason to believe at the time he was insolvent; and that said attachments did not constitute acts of bankruptcy on the part of said Rhodes. The cause thereupon came on to be heard on the 28th of January, 1899, in the said district court, when the said James H. Rhodes was duly adjudged an involuntary bankrupt; and upon considering the rule against said attaching creditors, and the answer thereto, an order was entered enjoining and restraining them from further prosecuting the actions commenced by them as aforesaid in the court of common pleas of Florence county, and by subsequent order, entered on the 10th of June, 1899, the order of the 28th of January was modified as follows: "It appearing that since the order of this court dated 28th January, 1899, a trustee, to wit, Robert C. Chase, has been elected trustee of the bankrupt estate of said Thomas D. Rhodes, and that such trustee has filed his petition in the court of common pleas for Florence county, praying that he be allowed to move to set aside certain attachments in said court in the causes therein (the further prosecution whereof was stayed by said order of 28th January, 1899), and to have the funds and property attached turned over to said trustee, it is, upon consideration thereof, counsel on both sides having been heard, ordered that all the attaching creditors enjoined by this court by its said order of 28th January, 1899, be, and they are hereby, permitted, in said court of common pleas for Florence county, to oppose and resist the petition and application of said trustee; and, upon the final determination thereof, to set up, urge, and prosecute any rights in the state court aforesaid to which he may be entitled; provided that, if the said court of common pleas for Florence county shall hold that it is without jurisdiction to pass upon the merits of the question raised by said trustees in said application, then the order of this court of 28th January, 1899, shall stand in all respects so that the fund now in controversy shall not be distributed until the final determination of the rights involved." It is to revise these two latter orders that the petition for revision is presented to the court.

Henry A. M. Smith and P. A. Willcox, for petitioners.
Lord & Burke and Asher D. Cohen, for respondent.

Before SIMONTON, Circuit Judge, and PAUL and WADDILL, District Judges.

WADDILL, District Judge, after stating the facts as above, delivered the opinion of the court.

The grounds of error assigned in the entry of the said two orders are, briefly, that the injunction should not have been awarded upon a rule to show cause issued in the bankruptcy proceedings, but only on a bill in equity, duly filed and process issued thereon, and also because the said attachments were issued in actions for fraud and obtaining property by false pretenses and false representations on the part of the bankrupt, and that the attachments having been obtained in the court of common pleas of the county of Florence, S. C., a court of general jurisdiction, prior to the adjudication in bankruptcy, that court, and not the district court of the United States, was the proper tribunal to determine the questions affecting the said attachments and the rights of the parties thereunder; that the trustee of the bankrupt should in that court assert his rights, and, having filed his petition therein, it was error in the district

court to in any manner restrain said attaching creditors in the prosecution of their claims in said court.

We will take up the several assignments of error specified, and incidentally touch upon the question, quite elaborately argued, as to the jurisdiction of the district court of the United States in dealing with the estate of bankrupts, where the rights of third parties or adverse claimants are involved, though it will not be necessary, in the view we take of this case, to pass upon that question or to discuss it at length.

Counsel insist with great earnestness that a bill in equity should have been filed in this case instead of proceeding by rule to show cause, as was done, and, while it is not said so in words, the inference is irresistible that it was necessary to institute such suit in the state court instead of the district court of the United States. While not admitting the correctness of the position, in any respect, that the bankrupt court is without power to bring before it all persons possessed of the bankrupt's estate, and to reduce such estate to possession and administer the same, but that, on the contrary, it is powerless to perform these simple functions and duties, and must rely upon a court of another sovereignty to hold up its hands and enforce its lawful orders and decrees, we think it quite clear in this case that there can be no doubt of the right of the bankrupt court to proceed as it did, and give full and complete relief in the premises. Norton v. Switzer, 93 U. S. 355, 23 L. Ed. 903; Lathrop v. Drake, 91 U. S. 516, 518, 23 L. Ed. 414; In re Gutwillig, (D. C.) 90 Fed. 481; In re Sievers (D. C.) 91 Fed. 366; In re Brooks (D. C.) 91 Fed. 508; In re Smith (D. C.) 92 Fed. 137; Carter v. Hobbs (D. C.) 92 Fed. 594; Murray v. Beal (D. C.) 97 Fed. 567. It may be conceded that in ordinary proceedings affecting the bankrupt's estate, in which third parties or adverse claimants are interested, the better practice would be either to file a bill in equity or a separate petition in the bankruptcy proceedings, setting up the cause of action in question, on which process should be regularly issued or full opportunity otherwise given to appear. But that has no application in this case, where the alleged ground of bankruptcy is the procuring of and levying the attachments enjoined. In other words, the petition for involuntary bankruptcy is based upon the fact that the attaching creditors have procured liens in contravention of the bankrupt law by their attachments. Their names, the amount of their claims, and what they did are all fully set up in the petition for involuntary bankruptcy, and it is upon the legality or illegality of those acts, and what was subsequently done in and by virtue of said proceeding, that the question of bankruptcy is determined. When the district court, which alone has power, under the constitution and laws of the United States, to adjudicate bankrupts, once determines this question, it is a finality, and no other court, save a federal appellate tribunal, can review or call in question its acts. The adjudication having been thus made, the attaching creditors were properly enjoined by the court, upon a rule to show cause, entered in the bankruptcy proceedings, against the further prosecution of their attachment suits. Upon

the adjudication of the bankrupt, all creditors became parties to the bankruptcy proceedings by operation of law, and particularly these creditors by whose acts the bankruptcy was caused. No good reason would seem to exist why a court, as to any creditor before it in a bankruptcy proceeding, should not, after the service of a rule, enjoin such creditor from taking any step or doing any act affecting the bankrupt's estate, or interrupting the court in the due administration thereof. These attaching creditors do not occupy the relation of third persons in possession of, or adverse claimants dealing with, the property of the bankrupt. In re Kenney (D. C.) 97 Fed. 557, 558. They are but creditors of the bankrupt, who have, in their effort to collect their money, sought an advantage which the law does not give, and they cannot gain any favored position by reason of an act of theirs which the law condemns.

The ruling of the district court, as to the effect of the levy of the attachments under the circumstances of this case, seems to be clearly right. Subdivision "f" of section 67 of the bankrupt law is too clear on this subject to admit of doubt or cavil. It is as follows:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such a conveyance as shall be necessary to carry the purposes of this section into effect."

Not only does this section make null and void the levy of the attachments under the circumstances of this case, but it expressly provides that the property affected by the levy shall be wholly discharged and released from the same, and that it shall pass to the trustee as a part of the bankrupt's estate, unless the court, upon due notice, shall order that the right under such lien be preserved for the benefit of such estate. This section is broad and comprehensive in its terms, and too clear to admit of serious controversy. Under it no preference can be acquired by the levy of attachments within four months of the filing of a petition in bankruptcy. It is true that, by a proviso to this section, the rights of a bona fide purchaser without notice at a sale under such lien are preserved and protected, but the proceeds arising from such sale must stand in lieu of the property sold; for it is expressly provided that such property shall pass to the trustee as a part of the estate, unless the lien be preserved for the benefit of the estate, and to that end the court may order such conveyances as may be necessary to carry the purposes of the section into effect. Authorities under the act of 1867 do not throw a great deal of light upon the correct interpretation of this section, and it is rather to those decided under the present law that reference will be made. This

section has several times been under review since the passage of the act, and the interpretation herein placed upon it may be said to be its generally accepted construction. In the case of In re Kenney, supra, also previously reported in 95 Fed. 427, Judge Brown, of the district court of the Southern district of New York, a judge of great learning and ability, fully considered this question, and in each decision held that liens acquired within four months of the filing of a petition in bankruptcy were annulled by the subsequent adjudication of the bankrupt. To the same effect are the decisions of several other of the district courts. In re Reichman, 91 Fed. 624; In re Fellerath, 95 Fed. 121; In re Rome Planing Mill, 96 Fed. 812; In re Vaughan, 97 Fed. 560; In re Higgins, Id. 775; In re Burrus, Id. 926.

This section has also been construed recently by the circuit court of appeals for the Seventh circuit (In re Richards, 37 C. C. A. 634, 96 Fed. 935), and there the lien was declared to become null and void by the subsequent adjudication of bankruptcy. In this decision, delivered by Jenkins, circuit judge, it is said, in discussing the apparent inconsistency between subdivisions "c" and "f" of section 67 of the bankrupt law:

"But subdivision 'f' is broader in its scope, and avoids all liens obtained through legal proceedings within the time stated against a person who is insolvent, within the meaning of the subdivision, irrespective of knowledge on the part of the creditor of the fact of insolvency, and irrespective of the question whether the obtaining of the lien was in any way suffered and permitted by the debtor. It avoids all liens obtained through legal proceedings against a person who is insolvent within four months before the filing of the petition." Page 939, 96 Fed., and page 637, 37 C. C. A.

In the further discussion of the effect of paragraph "f," Judge Jenkins gives something of the history of the passage of the bankrupt act (pages 939, 940, 96 Fed., and page 638, 37 C. C. A.):

"Two bills in bankruptcy were presented to congress,—one to the senate, and one to the house of representatives. They were broadly divergent in spirit. One was supposed to be largely in the interest of the creditor; the other, largely in the interest of the debtor. Subdivision 'c' of section 67 was contained in the house bill; subdivision 'f' was contained in the senate bill. The two houses were at disagreement respecting these bills, and the matter was referred to a conference committee of the two houses, near the end of the session, resulting in the incorporation into the house bill of subdivision 'f,' which was in the senate bill. Mr. Henderson, in presenting the conference report to the house, stated that subdivision 'f' was incorporated into the bill to strengthen the bill. 31 Cong. Rec. pt. 7, p. 6428, June 28, 1898. The confusion results from the omission of the conference committee to modify the language of subdivision 'c,' or to strike it out altogether; but the passage of the bill by the house with subdivision 'f' contained in it, after this report of the conference committee, must be taken as an indication of the will of the lawmaking power that the provisions of subdivision 'f' shall prevail, notwithstanding anything antagonistic to them previously found in the act."

In re Richards, 37 C. C. A. 637, 96 Fed. 939, 940; Chapman v. Brewer, 114 U. S. 158, 5 Sup. Ct. 799, 29 L. Ed. 83.

It may be stated, in passing, that this case was an involuntary bankruptcy proceeding, and the court held that the invalidity of the liens acquired within four months of the filing of a petition in bankruptcy was applicable alike to liens arising in voluntary

and involuntary cases. On the latter proposition, see, also, In re Vaughan (D. C.) 97 Fed. 560, and cases there cited.

Nothing stated herein is intended to imply that the court of common pleas of Florence county, S. C., did not have jurisdiction to entertain the attachment suits brought there at the time of their institution, or that said court is without concurrent jurisdiction with the United States district court to determine many matters affecting the estate of the bankrupt, when properly instituted by the trustee in bankruptcy, or in such proceedings as the trustee, by order of the bankrupt court, might appear in. As to many matters the two courts have concurrent jurisdiction, and can and should work in the utmost harmony; but as to others, among them the right to determine what are acts of bankruptcy and who are bankrupts, the United States district court's jurisdiction is superior to, and exclusive of, that of the state court, and, as to all questions necessarily involved in such exclusive jurisdiction, the federal, and not the state, courts should proceed and take charge of and administer the bankrupt's estate. Here, to illustrate, the district court declared the attachment proceedings in the state court to be acts of bankruptcy, and null and void, and by reason thereof adjudicated the bankruptcy. This ruling cannot be reviewed or called into question by the state court, and is absolutely conclusive as against all creditors of the bankrupt, until reviewed or reversed in the proper federal tribunal, i. e. this court, and its action is here approved and affirmed. Now, what follows as to the bankrupt's estate? Is it to be administered by the bankrupt court, or in proceedings in the state court declared, by the lower court and by this court, to be null and void? To ask this question is to answer it, for it cannot be possible that the act of bankruptcy itself can be made the basis of dispossessing the bankrupt court of its jurisdiction. The power of the United States district court to enjoin and restrain the parties from the further prosecution of the suits in the state court was plenary, and should have been exercised because necessary to the maintenance of its jurisdiction and the due administration of the bankrupt law. Ex parte Christy, 3 How. 292, 11 L. Ed. 603; Chapman v. Brewer, 114 U. S. 158, 173, 5 Sup. Ct. 799, 29 L. Ed. 83; Moran v. Sturges, 154 U. S. 256, 269, 270, 274, 14 Sup. Ct. 1019, 38 L. Ed. 981; In re Bruss-Ritter Co. (D. C.) 90 Fed. 651; Lea v. Geo. M. West Co. (D. C.) 91 Fed. 237; In re Smith (D. C.) 92 Fed. 135; In re Kenney, supra; In re Clark, 9 Blatchf. 372, Fed. Cas. No. 2,801; Watson v. Bank, 2 Hughes, 200, Fed. Cas. No. 17,279; In re Whipple, 6 Biss. 516, Fed. Cas. No. 17,512; Black, Bankr. pp. 10, 20.

On the kindred question of the duty of the bankrupt court, as to the possession of assets in the hands of voluntary assignees, reference may be had to the interesting opinion of Judge Thayer in the case of Davis v. Bohle, in the United States circuit court of appeals for the Eighth circuit (34 C. C. A. 372, 92 Fed. 325), and to that of Judge Wallace of the circuit court of appeals for the Second circuit (In re Gutwillig, 34 C. C. A. 377, 92 Fed. 337).

The contention that the action of the lower court is erroneous, because the attachments were issued in suits based upon causes of

action as to which it is claimed a discharge in bankruptcy would not be a release, is equally untenable. Whether the discharge would be a valid release against judgments obtained upon the said claims can alone be determined from a consideration of the law and facts applicable to the several causes of action, and not by a mere allegation in the pleadings as to the character of the claims; and, in this connection, it may be said that the trend of decisions of the federal courts, as well under the present as the former laws, are favorable to enlarging, rather than to limiting, the effect of the discharge in bankruptcy, and the character of cases to which the same is applicable. Chapman v. Forsyth, 2 How. 202, 11 L. Ed. 236; Neal v. Clark, 95 U. S. 704, 24 L. Ed. 586; Hennequin v. Clews, 111 U. S. 676, 4 Sup. Ct. 576, 28 L. Ed. 565; Upshur v. Briscoe, 138 U. S. 365, 11 Sup. Ct. 313, 34 L. Ed. 931; Loveland, Bankr. pp. 625, 627; In re Basch (D. C.) 97 Fed. 761.

Assuming, however, the plaintiffs' claim to be correct as to the cause of action in question, and of the effect of the discharge thereon, it by no means follows that there was any error in the lower court's action. In re Rosenberg, Fed. Cas. No. 12,054; In re Schwartz, Fed. Cas. No. 12,502; In re Williams, Fed. Cas. No. 17,700. The provision of section 11, subd. a, of the present bankrupt act, in reference to the stay of suits, cannot be construed to mean that in any proceeding, in which an adjudication in bankruptcy is had, the bankrupt court, instead of the tribunal in which the preference is given or sought, is to be stayed; and, moreover, such a conclusion would result in bankrupts and their creditors, as to these classes of claims, securing and giving preferences between creditors ad libitum. Under subdivision "f," § 67, of the bankrupt act, supra, all levies, judgments, attachments, or other liens obtained through legal proceedings against an insolvent person within four months of the filing of the petition in bankruptcy are annulled, and no exceptions from the sweeping provisions of the act are made as to the kind or character of claims sued on.

It follows from what we have stated that there is no error in the action of the lower court, as assigned, of which the petitioners for supervision and review here can complain. The only criticism we would make as to the proceedings is that the petition of the trustee in bankruptcy should not have been filed in the proceedings in the state court without the previous permission and order of the bankrupt court to do so, and that such petition should have been limited to a request to transfer the money to the bankrupt court, because the latter court had declared the proceedings in the state court to be in contravention of, and void under, the bankrupt law; and the decree of the 10th of June, 1899, in so far as it did more than this, and apparently left open to the state court the question of the effect and validity of the attachments issued at the suit of the bankrupt's creditors, and which it (the bankrupt court) had already declared void as to the bankrupt and his creditors, was erroneous. The decision of the lower court upon the assignments of error made is affirmed, and the district court is directed to proceed in said cause in accordance with the views herein expressed.