# IN THE MATTER OF THE ESTATE OF PAUL J. VOELLER, an involuntary bankrupt.

## DECIDED: JANUARY 6TH, 1902.

1. Either one of three conditions must exist to give the United States District Court jurisdiction to adjudge a person a bankrupt, namely: (1) He must either have had his principal place of business, resided or had his domicile within the territorial jurisdiction of the Court for the preceding six months or the greater portion thereof; or (2) while not having had his principal place of business or had his domicile within the United States, have property within the territorial jurisdiction of the Court; or (3) have been adjudged a bankrupt by a court of competent jurisdiction without the United States and have property within the jurisdiction of the Court.

2. The law presumes the domicile of origin to still exist in the absence of any proof of change of domicile.

3. The burden of proof is on the party alleging the change of domicile.

4. The Territorial Courts and the District Courts of the United States do not have co-ordinate or concurrent jurisdiction in bankruptcy proceedings.

5. A bankruptcy proceeding is in the nature of a proceeding *in rem*.

6. The province of the bankruptcy court is to marshal the assets of the bankrupt wherever they may be, so that there may be a proper administration upon his estate, and also that there may be a fair and just distribution thereof to his creditors entitled thereto; and in so marshalling said assets, the Court has full power to restrain any State or Territorial Court or officer from disposing of any of said assets until the adjudication of the debtor as a bankrupt or the dismissal of the petition.

7. It was the intention of Congress in passing Subdivision f of Section 67 to prevent any creditor of an insolvent debtor from obtaining any advantage over other creditors by legal proceedings during a period of four months prior to the filing of the petition in bankruptcy, whether voluntary or involuntary; and all liens so obtained are dissolved by the adjudication in bankruptcy.

8. Where it appeared that while the alleged bankrupt had formerly resided in the Territory of Hawaii, he had not had his principal place of business nor resided therein for the greater portion of six months preceding the filing of the petition in bankrutcy, having left the Territory three years before while a warrant was out for his arrest as a leper, and where it further appeared that the

wife and children of the alleged bankrupt are still residing in the Territory, and that he owns certain real property in the city of Honolulu, Territory of Hawaii, and no proof having been adduced on the hearing that the said alleged bankrupt had acquired a domicile beyond this Territory; upon objections filed to the making of an order of adjudication in bankruptcy on the ground that the Court had not obtained jurisdiction under Section 2, Subdivision 1, Chapter 3 of the Bankruptcy Act, *Held*, that no proof of change of domicile having been made, the law presumes the domicile of origin to still exist; but assuming that the domicile of origin no longer exists, the debtor has been shown to have real property within the territory owned by him, which is sufficient to enable this Court to assume jurisdiction, as a bankruptcy proceeding is a proceeding *in rem*, and this Court has jurisdiction of *the situs*.

9. On November 9, 1901, a petition was filed by certain creditors of one Voeller to adjudicate him a bankrupt. The act of bankruptcy complained of was a preference by legal proceedings obtained by a judgment against said Voeller in the Circuit Court of the First Judicial Circuit of the Territory, on the 14th of October, 1901. Execution issued on said judgment, and the real property of said Voeller was levied upon by the Sheriff of the Territory of Hawaii and advertised for sale on the 20th day of November, 1901. Upon application of petitioning creditors, a restraining order was issued out of this Court, directed to the Sheriff of Hawaii, enjoining him from selling said property until the further order of the Court, and directing him to appear before the Court on the 22nd day of November to show cause why the said property should not be turned over to the United States Marshal, and also to show cause why he should not be restrained from selling said property until after the hearing of the petition in bankruptcy. The day set for the hearing of this order to show cause was continued until the 3rd day of January, 1902, when both the petition in bankruptcy and said order were heard. Upon objections interposed to the jurisdiction of this Court to issue said restraining order, made on behalf of the judgment creditor and the Sheriff of the Territory of Hawaii; *Held*: The United States District Court has power to issue the restraining order complained of in this case under Section 2, Subdivision 15 of the Bankruptcy Act of 1898, giving courts of bankruptcy, in addition to the jurisdictional powers specifically enumerated elsewhere in the Act, "the power to make such orders, issue such process and enter such judgments  *  *  *  as may be necessary for the enforcement of the provisions of this Act."

In Bankruptcy.

{ Petition to adjudicate in an involuntary proceeding.

Order to show cause on restraining orders directed to A. M. Brown, Sheriff of the Territory of Hawaii.

*J. Alfred Magoon and T. I. Dillon,* for petitioning creditors.

*Kinney, Ballou & McClanahan and H. A. Bigelow,* for judgment creditor and A. M. Brown, Sheriff.

Estee, J.   On November 20th, 1901, a petition duly verified, was filed herein by three of the creditors of one Paul J. Voeller, alleging among other things, that the said Paul J. Voeller "has, for the greater portion of six months next preceding the date of the filing of this petition, had his domicile at Honolulu and has property in the city of Honolulu aforesaid subject to execution, and owes debts to the amount of $2729.73."

Said petition also sets up the nature and character of their provable claims showing that the same amount in the aggregate, in excess of securities held by them, to the sum of five hundred dollars.

Among the other allegations of said petition it appears that one J. J. Byrne had obtained a preference by legal proceedings whereby said J. J. Byrne had on the 14th day of October, 1901, obtained a judgment against said Paul J. Voeller, in the Circuit Court of the First Judicial Circuit of this Territory, in the sum of $650.90, and had procured execution to be issued under the said judgment, and under which execution the property of said Paul J. Voeller had been levied upon and advertised to be sold and disposed of under said execution on Wednesday, the 20th day of November, 1901, at 12 o'clock m.

Upon the showing made by said petition and affidavit this Court issued an order to the High Sheriff of the Territory, A. M. Brown, directing and ordering him to desist from and enjoining and restraining him from selling the property of the said Paul J. Voeller and every part thereof until the further

order of this Court; and directing the said High Sheriff as afore-said to be and appear at the Court room of this Court on Friday, the 22nd day of November, 1901, at 10 o'clock a. m., to show cause if any he had, why the said property of the said Paul J. Voeller should not be turned over to the United States Marshal for the Territory of Hawaii, and also to show cause why he should not be enjoined and restrained from selling or exposing said property for sale until after the hearing upon the said peti-tion herein.

Upon the day set for the hearing of the petition and order to show cause, postponed until the 3rd day of January, 1902, J. J. Byrne, the judgment creditor aforesaid, and A. M. Brown, the High Sheriff, appeared by their attorneys, Messrs. Kinney, Ballou & McClanahan and H. A. Bigelow, and opposed any action by this Court in the matter upon the following grounds:

1.    That this Court had no jurisdiction, as the said Paul J. Voeller is not now nor has he ever been for the six months preceding the date of the petition, either a resident or domiciled within the jurisdiction of the Court; nor had he his principal place of business within the jurisdiction of the Court as required by Subdivision 1, Chapter 2, Section 2 of the Bankruptcy Act of 1898.

2.    That this Court had no jurisdiction to remove the proper-ty in the hands of the High Sheriff of the Territory under the judgment hereinbefore referred to.

First.    Section 2 of Chapter 2 of the Bankruptcy Act, after providing for the Courts of bankruptcy, confers upon them jurisdiction to:  1.  "Adjudge persons bankrupt who have had their principal place of business, resided or had their domicile within their respective territorial jurisdictions, for the preced-ing six months or the greater portion thereof, or who do not have their principal place of business, reside or have their domi-cile within the United States, but have property within their jurisdictions, or who have been adjudged bankrupts by courts of competent jurisdiction without the United States and have property within their jurisdictions ......"

It is apparent therefore, that either one of three conditions must exist in order to enable this Court to have jurisdiction to adjudge a person a bankrupt to wit:

1.   The person adjudged to be a bankrupt must either have had his principal place of business, resided, or had his domicile within the territorial jurisdiction of the Court for the preceding six months or the greater portion thereof; or

2.   While not having his principal place of business, resided or had his domicile within the United States, have property within the jurisdiction of the Court; or

3.   Have been adjudged a bankrupt by a court of competent jurisdiction without the United States and have "property within their jurisdictions."

The petition in this case shows on its face two grounds of jurisdiction:

1st.   That Paul J. Voeller of Honolulu, Island of Oahu, Territory of Hawaii, has for the greater portion of six months next preceding the date of the filing of this petition, had his domicile at Honolulu aforesaid; and (2) has property in the city of Honolulu aforesaid, subject to execution; and owes debts to the amount of two thousand seven hundred and twenty-nine and 73-100 dollars ($2729.73).   Either of which two grounds if borne out by the facts adduced at the hearing would be sufficient to give this Court jurisdiction.

It was testified to upon the hearing that Voeller had formerly lived here in Honolulu; that he owned certain real estate in this city; that he was suffering from leprosy and a warrant was out for his arrest, and to avoid arrest he left the Islands some three years ago; that he left his wife and children here in the Islands and they are still resident here; that he was known to be in California at one time but was afterwards believed to have gone to Japan.   The judgment creditor contends that the said Voeller left here never intending to return, and that he has therefore lost his domicile in the Islands.   It has been held that "A man's domicile, as the word implies, is his house, his home; and it may continue to be such for years without being actually

inhabitated by him..........domicile as a question of fact
is often one of great difficulty to determine. Yet, in contempla-
tion of law, every one has a domicile somewhere, because upon
it generally depends his personal status, rights and duties and
the disposition of his property after his death. *Abington v. North
Bridgewater*, 23 Pick. 176; *Mitchell v. The United States*, 21
Wall. 351; *Desmare v. The United States*, 93 U. S. 609.
Furthermore, a person, who, in contemplation of law, has a
domicile, may, nevertheless, as a matter of fact be a mere
wanderer and not an inhabitant of any place." *Holmes, admin-
istrator, v. Oregon and California Ry. Co.*, 5 Fed. 523-527.

"Where a change of domicile is alleged, the burden of proof
rests upon the party making the allegation." *Desmare v. The
United States*, 93 U. S. 605-610; *Nixon v. Palmer*, 10 Barb.
(N. Y.) 175; *In re Filer*, 108 Fed. 209.

There was not the slightest proof adduced on the hearing of
this matter that Voeller had acquired a domicile beyond this
Territory, and until such proof is made the law presumes his
domicile remains in the Territory. The fact that he left because
he was in danger of arrest as a leper gives added force to this
proposition. *Morris v. Gilmer*, 129 U. S. 315; *Cobb v. Rice*,
130 Mass. 231-235, where the Court says: "That, at the time
of the adjudication and assignment he (the bankrupt) was merely
a fugitive from justice who has gained no domicile elsewhere;
and therefore he remained a resident within the jurisdiction of
the District Court in this District and liable to be proceeded
against in bankruptcy..........His domicile being here, con-
tinues until he acquires one elsewhere." *Desmare v. United
States*, Supra.

"A change of domicile must be clearly shown." *Gravillon v.
Richard's Executor*, 33 Am. Dec. 563, (13 La. 293.)

But conceding that the petitioning creditors have failed to
show that Voeller had a domicile within this territorial juris-
diction for the six months preceding the filing of the petition
yet it clearly appears that he has property within this juris-
diction and subject to the jurisdiction of the court, to-wit,

certain real estate set forth in the schedule attached to the petition and estimated to be of the value of some two thousand dollars. This would, independently of the provision of domicile or residence, bring him within the purview of the bankruptcy jurisdiction of this Court.

The essential facts which give a court jurisdiction of bankruptcy proceedings appearing affirmatively and distinctly in this proceeding, I am therefore of opinion that unless some other reasons are given why said Voeller should not be adjudged a bankrupt, the petitioning creditors are entitled to an order adjudging him such.

Second: Upon the second objection raised by counsel to the jurisdiction of this Court, namely, its power to issue the restraining order to the High Sheriff of the Territory, it is clear that the Court was fully within its jurisdictional powers when it issued said order, and it is not a fact that the Territorial Courts and the District Courts of the United States have concurrent or co-ordinate jurisdiction in bankruptcy proceedings.

"When the bankruptcy law cannot be properly administered by the court having jurisdiction, in consequence of the interference of a state court and its determination to adjudicate upon the rights of the parties and property in the bankruptcy court, the latter ought not to hesitate to assert its authority; for in this matter the courts of the United States and the courts of the state are not of co-ordinate authority but the Federal Court is superior." *In re Miller*, Fed. Case No 9, 551; (6 Biss. 30.)

It would seem quite unnecessary to state, were it not for the point raised by counsel's brief, that the United States District Courts are made courts of bankruptcy and "are invested with such jurisdiction in law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings in vacation, in chambers and during their respective terms......" Section 1, Subdiv. 2, and Section 2 of the Bankruptcy Act of 1898. And are given jurisdiction "to appoint receivers and marshals, upon application of parties in interest........to take charge of the property of bankrupts after the filing of the petition and

until it is dismissed or the trustee is qualified." Section 2, Subdivision 3 of said Act. And in addition to the jurisdictional powers specifically enumerated, it is further provided that this Court shall have "power to make such orders, issue such process and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this Act." (Sec. 2, Subdivision 15.)

Indeed it has been held that a bankruptcy proceeding is in the nature of a proceeding *in rem*; the acquisition of jurisdiction is based upon the taking possession by the Court of the debtor's whole property and effects, and upon its adjudication as to his *status*. Hence the Federal Court in which the bankruptcy procedings are commenced, has jurisdiction of the debtor's whole estate wherever situate. *Markson v. Heaney*, Fed. Case No. 9098. (1 Dill. 497.)

It is further provided by Subdivision f. of Section 67 of the Act, that: "All levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt and the property affected by the levy, judgment, attachment or other lien, shall be deemed wholly discharged and released from the same."

The decisions construing this Section are clearly to the effect that it was the intention of Congress by the aforesaid Section to prevent any creditor of an insolvent debtor from obtaining any advantage over other creditors by legal proceedings during a period of four months prior to the filing of a petition in bankruptcy, whether voluntary or involuntary, and that all such liens are dissolved by the adjudication. *In re Richards*, 96 Fed. 935-939; *In re Kenney*, 105 Fed. 897-898; *Bear, et al., v. Chase*, 99 Fed. 920; *St. Cyr v. Daignault, et al.*, 103 Fed. 854; *In re Blair*, 108 Fed. 529-530; *In re Lesser, et al.*, 108 Fed. 203.

The province of the bankruptcy court is to marshal the assets of the bankrupt so that there may be a proper administration

upon his estate, and also that there may be a fair and just distribution thereof to his creditors entitled thereto; and in so marshaling the assets of said estate, the Court has full power to restrain any state or territorial court or officer from disposing of any of said assets until the adjudication of the debtor as a bankrupt or the dismissal of the petition.

The provisions of the bankruptcy act of 1867 and which Act was in force prior to the passage of the Act of 1898, are practically the same as the latter Act so far as the jurisdiction of the Court of bankruptcy is concerned; and there are numerous cases to be found where the United States Courts are sustained in their exercise of the power to restrain all procedings in state courts affecting the disposition or sale of the property of a debtor pending the decision of the District Court upon the question of his bankruptcy. This is done so that the rights of all parties may be preserved until the proper court can administer upon the estate of the bankrupt or dismiss the petition, as the facts upon the hearing may disclose to be necessary.

In the case of *In re Mallory*, 1 Sawyer, 88-98 (Fed. Case No. 8991) afterwards affirmed by Judge Field on appeal to the Circuit Court of the Ninth Circuit, it was held that the District Court had power to restrain the State Court in a case similar to the case at bar, and in a well considered opinion the Court said:

"In voluntary cases, the filing of the petition is an act of bankruptcy, and the debtor at the same time surrenders all his estate and effects for the benefit of his creditors and is forthwith adjudged a bankrupt. The District Court is thus clothed at once in voluntary cases with jurisdiction over the debtor and his property. But where the proceeding is involuntary, the debtor is not adjudged a bankrupt until the return and hearing of the order to show cause, and may not be then if he have a sufficient defense. There is therefore good reason for giving the Court power to enjoin between the time of filing the creditor's petition and the return of the order to show cause, as there is in these cases no voluntary surrender of the property,

and the title cannot vest in the assignee until after adjudication."

See also the case of *Blake, Moffitt & Towne, et al., v. Francis Valentine Co., et al.*, 89 Fed. 691, (9th Circuit) where the Court held: "A District Court of the United States as a court of bankruptcy, under the Act of July 1, 1898, has the power to enjoin the sale of property of a debtor under process from a state court * * * * "

The Court futher holding that a District Court had the power to take and "preserve the property until the time arrives when a petition in bankruptcy under the Act may be filed against him, where it is shown that such process is the result of an act of bankruptcy committed by the debtor since the passage of the act in suffering one creditor to obtain a preference through legal proceedings." *In re Kimball*, 97 Fed. 29.

See also the decision of this Court rendered in the matter of the bankruptcy of Lum Man Suk, decided September 20th, 1901. (1)

I am therefore of opinion:—

1.   That the judgment creditor has not shown such proof of a change of domicile by the debtor as to prevent this court from assuming that the domicile of origin still exists.

2.   Assuming that the domicile of origin no longer exists, yet it is clear that the debtor has property within the territorial jurisdiction of the Court, which fact is sufficient to enable this Court to assume jurisdiction, as a bankruptcy proceeding is a procedings *in rem*, and this Court has jurisdiction of the *situs*.

3.   It is the order of this Court that the prayer of the petitioner be granted and the said Paul J. Voeller be adjudged a bankrupt.

4.   That the restraining order heretofore issued in this case was properly issued and the said A. M. Brown, High Sheriff of the Territory of Hawaii, is directed to turn over to the United States Marshal all property in his possession or under his control belonging to the said Paul J. Voeller.

NOTE: See ante *In re Lum Man Suk*, P. 135.